**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**

AECOM ENERGY & CONSTRUCTION, INC.,

Plaintiff,

v.

THE UNITED STATES OF AMERICA,

Defendant.

Case No. 20-2016 C

**JOINT PRELIMINARY STATUS REPORT**

Plaintiff AECOM Energy & Construction, Inc., formerly known as URS Energy & Construction, Inc., ("URS") and Defendant the United States of America (the "Government" or "DOE") submit this Joint Preliminary Status Report pursuant to Appendix A of the Rules of the United States Court of Federal Claims ("RCFC"), Paragraphs 4 and 5.  The Government filed its answer on May 21, 2021 and its amended answer on May 25, 2021, and the parties held an early meeting of counsel on June 23, 2021 and on July 7, 2021.  The parties' positions on the issues are as follows.

**I.      RCFC Appendix A, Paragraph 4 – Responses**

**a)      Does the court have jurisdiction over the action?**

Plaintiff states that the Court has jurisdiction over this action.  This action is an appeal of two final decisions rendered by a contracting officer pursuant to the Contract Disputes Act of 1978 ("CDA"), 41 U.S.C. § 7103, and this Court has jurisdiction pursuant to the CDA, 41 U.S.C. § 7104(b)(1), and the Tucker Act, 28 U.S.C. § 1491(a)(1).

Defendant states that it is not aware of any basis to contest jurisdiction.

**b)      Should the case be consolidated with any other case and, if so, why?**

No.  The parties agree that this case should not be consolidated with any other case.

1

**c)      Should trial of liability and damages be bifurcated and, if so, why?**

At present, the parties believe that trial of liability and damages need not be bifurcated.

**d)      Should further proceedings in the case be deferred pending consideration of another case before this court or any other tribunal and, if so, why?**

No.  The parties agree that there is no need to defer proceedings in this case.

**e)      In cases other than tax refund actions, will a remand or suspension be sought and, if so, why and for how long?**

No.  The parties do not intend to seek a remand or suspension.

**f)      Will additional parties be joined? If so, the parties shall provide a statement describing such parties, their relationship to the case, the efforts to effect joinder, and the schedule proposed to effect joinder.**

At present, the parties do not anticipate joining additional parties.

**g)      Does either party intend to file a motion pursuant to RCFC 12(b), 12(c), or 56 and, if so, what is the schedule for the intended filing?**

Neither party intends to file a motion pursuant to RCFC 12(b) or 12(c).  The parties intend to file motions for summary judgment pursuant to RCFC 56.  The Parties intend to propose a briefing schedule for RCFC 56 motions following the close of discovery.

**h)      What are the relevant factual and legal issues?**

The relevant factual and legal issues include whether DOE breached the parties' contract; whether the contract requirements were changed through directed or constructive changes; whether URS is entitled to equitable adjustments; whether there were differing site conditions; whether DOE improperly delayed URS's work; whether there was a mutual mistake as to the accuracy or reliability of a historical site assessment; whether DOE caused a cardinal change to the contract; and whether performance was impracticable.  The relevant factual and legal issues are set out in more detail in Appendix A.

      **i)**      **What is the likelihood of settlement?  Is alternative dispute resolution contemplated?**

The parties are open to the possibility of mediation but believe that the case should proceed at this time.  As discovery proceeds, the parties will continue to consider the possibility of settlement and alternative dispute resolution.

      **j)**      **Do the parties anticipate proceeding to trial?  Does either party, or do the parties jointly, request expedited trial scheduling and, if so, why?**

In the absence of the disposition of this case through pre-trial motions for summary judgment or settlement, the parties anticipate proceeding to trial.  The parties agree that an expedited trial is not necessary.  The parties propose Washington, DC, as the location for the trial.

      **k)**      **Are there special issues regarding electronic case management needs?**

There are no special issues at this time regarding electronic case management needs.  The parties will negotiate in good faith should any issues arise.

      **l)**      **Is there other information of which the court should be aware at this time?**

The parties held an early meeting of counsel on June 23, 2021.  As set out in the proposed discovery schedule below, the parties stipulate to extending the deadline for initial disclosures to August 16, 2021.  *See* RCFC 26.  The parties also stipulate to increasing the number of interrogatories to 50 per side.  *See* RCFC 33.

The parties anticipate seeking a protective order in this case to protect the exchange of proprietary materials in discovery.  This protective order will include a non-waiver agreement consistent with Federal Rule of Evidence 502(d).  The parties intend to negotiate a mutually acceptable protocol for the production of electronically-stored information.

**II.      RCFC Appendix A, Paragraph 5 – Proposed Discovery Plan**

The parties' proposed discovery schedule is as follows:

| Date | Event |
|---|---|
| July 13, 2021 | Joint Preliminary Status Report filed |
| August 16, 2021 | Initial disclosures pursuant to RCFC 26(a)(1) |
| May 6, 2022 | Substantial completion of document production |
| December 30, 2022 | Completion of fact discovery |
| February 24, 2023 (+8 weeks) | Identify expert(s) and serve expert report(s) |
| April 21, 2023 (+8 weeks) | Identify rebuttal expert(s) and serve rebuttal expert report(s) |
| June 16, 2023 (+8 weeks) | Completion of expert discovery, including depositions |
| June 30, 2023 (+2 weeks) | Parties shall file a joint status report indicating how this case shall proceed, with a proposed schedule as appropriate. |

July 13, 2021                                  Respectfully submitted,

                                               /s/ Charles C. Speth
                                               CHARLES C. SPETH, *Counsel of Record*
                                               WILMER CUTLER PICKERING
                                                 HALE AND DORR LLP
                                               1875 Pennsylvania Avenue N.W.
                                               Washington, D.C. 20006
                                               Telephone: (202) 663-6000
                                               Facsimile: (202) 663-6363
                                               Email: charles.speth@wilmerhale.com

                                               ANDREW E. SHIPLEY, *Of Counsel*
                                               RUTH E. VINSON, *Of Counsel*
                                               WILMER CUTLER PICKERING
                                                 HALE AND DORR LLP
                                               1875 Pennsylvania Avenue N.W.
                                               Washington, D.C. 20006
                                               Telephone: (202) 663-6000
                                               Facsimile: (202) 663-6363
                                               Email: andrew.shipley@wilmerhale.com
                                                      ruth.vinson@wilmerhale.com

                                               *Attorneys for Plaintiff AECOM Energy &*
                                               *Construction, Inc.*


                                               Respectfully submitted,

                                               MICHAEL D. GRANSTON
                                               Deputy Assistant Attorney General


                                               MARTIN F. HOCKEY, JR.
                                               Acting Director

                                               s/ Patricia M. McCarthy
                                               PATRICIA M. MCCARTHY
                                               Assistant Director


                                               s/ P. Davis Oliver
                                               P. DAVIS OLIVER
                                               Senior Trial Counsel
                                               BRET VALLACHER
                                               IOANA CRISTEI

Trial Attorneys
Commercial Litigation Branch
Civil Division
Department of Justice
P.O. Box 480
Ben Franklin Station
Washington, D.C. 20044
Telephone: (202) 353-0516
Fax: (202) 307-0972
P.Davis.Oliver@usdoj.gov
*Attorneys for Defendant*
*Of Counsel:*


BRANDON MIDDLETON
Chief Counsel
BRADY L. JONES, III
Assistant Chief Counsel for Acquisition and
Litigation
SKY W. SMITH
Trial/Procurement Counsel Office of Chief
Counsel Environmental Management
Consolidated Business Center
U.S. Department of Energy

**APPENDIX A**

| Count | Complaint/ Answer Paragraphs | Issue |
|---|---|---|
| Count I: Breach of Contract (Failure to Disclose Superior Knowledge) | ¶¶ 491-496 | Whether DOE breached the contract by purportedly failing to disclose its superior knowledge of vital information related to the need for NESHAP pre-construction permits at the SPRU site, and whether URS has proven its claimed damages for that alleged breach. |
| Count II: Breach of Contract (Misrepresentation of NESHAP Permitting Requirement | ¶¶ 497-502 | Whether DOE breached the contract by purportedly misrepresenting by omission that NESHAP pre-construction permits would not be required at the SPRU site, and whether URS has proven its claimed damages for that alleged breach. |
| Count III: Breach of Contract (Breach of Express Duties to Use Best Efforts to Reduce Non-Value-Added Requirements and Processes, to Cooperate, and to Facilitate Performance) | ¶¶ 503-509 | Whether DOE breached the contract by purportedly failing to meet its express contractual duties to use best efforts to reduce non-valued-added requirements and processes, to cooperate, and to facilitate performance, and whether URS has proven its claimed damages for that alleged breach. |
| Count IV: Breach of Contract (Breach of Implied Duties of Good Faith and Fair Dealing and to Cooperate) | ¶¶ 510-514 | Whether DOE breached the contract by purportedly failing to meet its implied duties of good faith and fair dealing and to cooperate, and whether URS has proven its claimed damages for that alleged breach. |
| Count V: Breach of Contract (Interference with URS's Right to Determine Specific Methods for Accomplishing Work) | ¶¶ 515-519 | Whether DOE breached the contract by purportedly interfering with URS's contractual right to determine specific methods of performance, and whether URS has proven its claimed damages for that alleged breach. |
| Count VI: Constructive Change (NESHAP Permitting Requirement) | ¶¶ 520-526 | Whether URS is entitled to an equitable adjustment under the Changes Clause, FAR 52.243-2, Alternate II, because DOE allegedly directed URS to obtain NESHAP pre-construction permits for the G2 and H2 enclosures and portable ventilation units, and whether URS has proven its claimed damages for that alleged change. |

| | | |
|---|---|---|
| Count VII: Directed or Constructive Change (Hillside Instability) | ¶¶ 527-534 | Whether URS is entitled to an equitable adjustment under the Changes Clause, FAR 52.243-2, Alternate II, because DOE allegedly directed URS to remediate instability of a hillside at the SPRU site, and whether URS has proven its claimed damages for that alleged change. |
| Count VIII: Directed or Constructive Change (Changes to Enclosures) | ¶¶ 535-543 | Whether URS is entitled to an equitable adjustment under the Changes Clause, FAR 52.243-2, Alternate II, because DOE allegedly failed to approve an enclosure design that met the requirements of Modification 35 and purportedly imposed an extra-contractual requirement, and whether URS has proven its claimed damages for that alleged change. |
| Count IX: Constructive Change (Sludge Disposal) | ¶¶ 544-549 | Whether URS is entitled to an equitable adjustment under the Changes Clause, FAR 52.243-2, Alternate II, because the purported delays resulting from DOE's changes to the contract and the alleged breaches of its duties expanded the scope of sludge processing work URS had to perform, and whether URS has proven its claimed damages for that alleged change. |
| Count X: Constructive Change (Failure to Timely Approve Water Disposal Plan) | ¶¶ 550-556 | Whether URS is entitled to an equitable adjustment under the Changes Clause, FAR 52.243-2, Alternate II, because DOE purportedly failed to timely approve the water disposal plan, thus causing increased water disposal costs, and whether URS has proven its claimed damages for that alleged change. |
| Count XI: Government Delay of Work (Failure to Timely Approve Water Disposal Plan) | ¶¶ 557-564 | Whether URS is entitled to an adjustment under the Government Delay of Work Clause, FAR 52.242-17, because DOE purportedly failed to timely approve the water disposal plan, and whether URS has proven its claimed damages for that alleged delay. |
| Count XII: Constructive Change (Additional Baselines BCP 133 and BCP 178) | ¶¶ 565-573 | Whether URS is entitled to an equitable adjustment under the Changes Clause, FAR 52.243-2, Alternate II, because DOE directed URS to prepare additional project baselines purportedly not required by the contract, and whether URS has proven its claimed damages for that alleged change. |

| | | |
|---|---|---|
| Count XIII: Differing Site Condition or Pre-Existing Condition (Mixer-Settler in Building G2 Cell 3) | ¶¶ 574-584 | Whether URS is entitled to an equitable adjustment due to the alleged differing site condition or pre-existing condition of the mixer-settler's presence in Building G2 Cell 3, and whether URS has proven its claimed damages for that alleged differing site condition or pre-existing condition. |
| Count XIV: Differing Site Condition or Pre-Existing Condition (Contaminated Roof Header Vent on Building G2) | ¶¶ 585-595 | Whether URS is entitled to an equitable adjustment due to the alleged differing site condition or pre-existing condition of the contaminated roof header vent on Building G2, and whether URS has proven its claimed damages for that alleged differing site condition or pre-existing condition. |
| Count XV: Differing Site Condition or Pre-Existing Condition (Contaminated Lead in 319-Foot Elevation Pipe Trench) | ¶¶ 596-606 | Whether URS is entitled to an equitable adjustment due to the alleged differing site condition or pre-existing condition of the contaminated lead in the 319-foot elevation pipe trench, and whether URS has proven its claimed damages for that alleged differing site condition or pre-existing condition. |
| Count XVI: Differing Site Condition or Pre-Existing Condition (Mercury Contamination) | ¶¶ 607-617 | Whether URS is entitled to an equitable adjustment due to the alleged differing site condition or pre-existing condition of the mercury contamination in the Building H2 piping and tunnels, and whether URS has proven its claimed damages for that alleged differing site condition or pre-existing condition. |
| Count XVII: Differing Site Condition or Pre-Existing Conditions (Water Leak) | ¶¶ 618-628 | Whether URS is entitled to an equitable adjustment due to the alleged differing site condition or pre-existing condition of the leak in the KAPL storm water pipe that caused higher than anticipated levels of groundwater on the SPRU site, and whether URS has proven its claimed damages for that alleged differing site condition or pre-existing condition. |
| Count XVIII: Differing Site Condition or Pre-Existing Condition (Excess Contamination) | ¶¶ 629-639 | Whether URS is entitled to an equitable adjustment due to the alleged differing site condition or pre-existing condition of the excess contamination in the concrete in Buildings H2 and G2, and whether URS has proven its claimed damages for that alleged differing site condition or pre-existing condition. |
| Count XIX: Differing Site Condition or Pre- | ¶¶ 640-650 | Whether URS is entitled to an equitable adjustment due to the alleged differing site condition or pre- |

| | | |
|---|---|---|
| Existing Condition (Radiation and Contamination in Sumps) | | existing condition of high levels of radiation and contamination in the sumps in Buildings G2 and H2, and whether URS has proven its claimed damages for that alleged differing site condition or pre-existing condition. |
| Count XX: Breach of Contract (Misrepresentation in Contract Documents) | ¶¶ 651-656 | Whether DOE breached the contract by allegedly making material misrepresentations in the contract documents concerning the conditions set out in Counts XIII through XIX, and whether URS has proven its claimed damages for that alleged breach. |
| Count XXI: Mutual Mistake (Mistaken Understanding of Accuracy of HSA) | ¶¶ 657-665 | Whether the contract should be reformed to a cost-reimbursable contract without a cost-sharing provision due to the parties' mutual mistaken understanding that the HSA accurately described the conditions of the SPRU site, including the location and extent of contamination, and whether URS has proven its claimed damages for that alleged mutual mistake. |
| Count XXII: Directed or Constructive Change (Changes Related to the Fifth Condition of Approval and ORISE Verification) | ¶¶ 666-672 | Whether URS is entitled to an equitable adjustment under the Changes Clause, FAR 52.243-2, Alternate II, because of changes imposed in and as a result of the fifth condition of approval and subsequent related modifications to the Task Order, including the requirements for independent verification by DOE's third-party contractor Oak Ridge Institute for Science and Education (ORISE), and whether URS has proven its claimed damages for that alleged change. |
| Count XXIII: Constructive Change (Inefficiencies Related to Demolition Inside of Building H2 Enclosure) | ¶¶ 673-680 | Whether URS is entitled to an equitable adjustment under the Changes Clause, FAR 52.243-2, Alternate II, due to alleged inefficiencies related to demolition inside of the Building H2 enclosure due to the independent ORISE verification requirement described in Count XXII, and whether URS has proven its claimed damages for that alleged change. |
| Count XXIV: Government Delay of Work (Failure to Timely Conduct Pre-Fixative Verification Surveys and Review and | ¶¶ 681-688 | Whether URS is entitled to an adjustment under FAR 52.242-17 due to DOE's alleged failure to arrange for ORISE to timely conduct pre-fixative verification surveys and DOE's alleged failure to timely review and comment on the Building H2 data |

| | | |
|---|---|---|
| Comment on Data Packages) | | packages, and whether URS has proven its claimed damages for that alleged change. |
| Count XXV: Equitable Adjustment (Removal of Contaminated Soil in Excess of Bounding Condition) | ¶¶ 689-692 | Whether URS is entitled to an equitable adjustment because it was required to remove contaminated soil allegedly in excess of the bounding condition, and whether URS has proven its claimed damages for that alleged work. |
| Count XXVI: Constructive Change (New Building H2 Soil Backfill Requirements) | ¶¶ 693-698 | Whether URS is entitled to an equitable adjustment under the Changes Clause, FAR 52.243-2, Alternate II, because DOE allegedly imposed extra-contractual requirements on URS's work backfilling the Building H2 footprint, and whether URS has proven its claimed damages for that alleged change. |
| Count XXVII: Equitable Adjustment (Escalation in Labor Costs) | ¶¶ 699-701 | Whether URS is entitled to an equitable adjustment due to the escalation in labor costs resulting from critical path delay allegedly caused by DOE, and whether URS has proven its claimed damages for that alleged escalation. |
| Count XXVIII: Breach of Contract (Cardinal Change) | ¶¶ 702-707 | Whether DOE breached the contract through its purported changes and misrepresentations and by allegedly directing and/or causing cardinal changes, and whether URS has proven its claimed damages for that alleged breach. |
| Count XXIX: Equitable Adjustment (Impracticability of Performance) | ¶¶ 708-714 | Whether URS is entitled to an equitable adjustment due to the alleged impracticability of performance of the contract, and whether URS has proven its claimed damages for that alleged impracticability. |