IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | |
|---|---|
| AECOM ENERGY & CONSTRUCTION, INC.,<br>      Plaintiff,<br>  v.<br>THE UNITED STATES OF AMERICA,<br>      Defendant. | Case No. 20-2016 C |

<u>JOINT REQUEST FOR STATUS CONFERENCE AND MODIFICATION OF DISCOVERY SCHEDULE AND STATUS REPORT</u>

Plaintiff AECOM Energy & Construction, Inc., formerly known as URS Energy & Construction, Inc., ("URS") and defendant the United States of America (the "Government") respectfully request a status conference to discuss: (i) the timing of the Government's privileged-based review and productions; and (ii) an extension of the close of fact discovery deadline to avoid the possibility of prejudice to URS based on the timing of those productions. In addition, in accordance with the Discovery Scheduling Order entered by the Court on October 18, 2023 (ECF No. 35), the parties submit this Joint Status Report updating the Court on the status of discovery.

**I. Status of Document Production**

  **A. Government Document Production**

The Discovery Scheduling Order (ECF No. 35) entered by the Court after the last status conference in this case set a deadline of January 10, 2024 for the completion of the Government's document production. The parties, in turn, reported in their joint status reports that the Government expected to complete its "productions (minus documents withheld on the basis of potential privilege)" by "January 10, 2024." ECF Nos. 39, 40. The Government's initially screened privileged withholdings were considerable, totaling around two million documents. Both leading up to and on January 10, 2024, the Government apprised URS of this

1

volume, and explained to URS the steps it would take to address the challenge. On January 10, 2024, the Government explained that the volume turned out to be less than two million, and that it would commence "successive productions" of "very large privilege kick-outs." It further explained that "the first of these was sent out yesterday and a couple more should be arriving late this week or early next." The Government added that it would commence a "TAR for responsiveness"[1] review process on other privileged withholdings, which it disclosed still stood around "400,000." On January 12, 2024, the Government informed URS that this TAR process had begun. The Government's aim was to make privilege review manageable given time constraints. The parties disclosed this TAR review process (as well as the Government's aim) to the Court in their last status report. *See* ECF No. 43 at 1-2.

Since the January 10, 2024 deadline, the Government made eight productions to URS consisting of documents initially withheld on privilege grounds. These productions thus far total approximately 1.3 million documents (or approximately 9.5 million pages). A chart of these productions is below:

| Production Date | Document Count |
|---|---|
| 1/12/2024 | 260,124 |
| 1/23/2024 | 180,361 |
| 2/09/2024 | 945 |
| 2/14/2024 | 258,283 |
| 2/27/2024 | 140,356 |
| 3/08/2024 | 160,062 |
| 3/22/2024 | 159,441 |
| 4/03/2024 | 142,878 |

---

[1] TAR is technology assisted review, *i.e.*, review by way of machine learning.

Throughout this period, URS has continued to inquire about the status of the Government's review and productions.  The parties discussed the status of document production on calls on (at least) February 9, February 23, and April 5.  They also discussed the status by email on (at least) January 10, January 12, January 25, February 2, March 15, March 29, and April 3.  On April 5, 2024, undersigned Government counsel called URS's counsel to update URS on the status of the Government's privilege-based productions and TAR review.  In that call, the Government informed URS that it intended to complete its non-TAR-based privilege productions by May 1, 2024, but further explained that the TAR process (which was nearing completion) did not render privilege review as manageable as the Government had hoped.  The Government disclosed to URS that even with TAR, it estimated that there would likely still be approximately 50,000 potentially privileged documents that it would need to review manually, redact, and log as appropriate.  Given the time and resource-burden that such a process would require, the Government asked URS to agree to a limiting stipulation.  Absent some agreement, the Government explained that it was unable to provide URS with a firm completion date for this process except that it could take at least several more months.

### B.      URS Document Production

Since the last status conference, URS produced approximately 30,000 documents, all of which were produced by the Government's production deadline of January 10, 2024.  In total, prior to January 10, 2024, URS reviewed more than 200,000 documents for privilege.  Of the documents that were reviewed for privilege, more than 100,000 were produced in full (i.e., they were determined to be non-privileged), and approximately 2,550 documents were produced with privilege redactions (i.e., they were determined to be partially privileged).  URS has more than

35,000 documents on its document-by-document privilege log and is prepared to produce that log whenever the Government is ready to exchange logs.

## II.     Date Certain for Completion of Government Document Production

URS and the Government have had several recent discussions regarding the date for the Government to finish these privilege-based productions. The parties have not been able to agree upon a specified date or conditions, and thus ask for the Court's assistance to determine how this matter should proceed. For the Court's convenience, the parties' positions are set forth separately below.

**URS's Position.** URS's position is that after nearly three years of discovery, a date certain is needed for the completion of the Government's document production, so that the parties can proceed to depositions in an orderly manner. To that end, URS requests that the Court impose a firm deadline on the Government's completion of production. URS's position is that May 15, 2024 would be a reasonable deadline for completion of the Government's document production, including the production of any downgraded (i.e., non-privileged) or redacted (i.e., only partially privileged) documents that must be produced following its privilege review.

URS opposes the Government's first alternative proposal discussed below—i.e., the "metadata-only arrangement." The Government is asking to forgo a privilege review of approximately 50,000 documents, which it has withheld to date merely because the documents hit on a particular keyword or were possessed, sent, or received by a particular custodian. That position is completely novel in civil litigation and would undoubtedly be opposed by the Department of Justice if taken by a corporate *defendant*. Moreover, it would be highly prejudicial and grossly unfair to URS, for several reasons.

*First*, URS has already completed its own large privilege review, wherein it reviewed more than 200,000 documents for privilege, at significant time and expense to the company.

*Second*, there are clearly non-privileged (or partially privileged, which deserve only redaction) documents within the approximately 50,000 documents that the Government continues to withhold—all documents which have already been identified as relevant by the Government's TAR review. For example, URS's privilege review of documents that had initially been withheld because they hit on its privilege keywords resulted in productions to the Government by URS of approximately 80,000 documents.

*Third*, although it is correct that *after* the Discovery Scheduling Order had been entered by the Court on October 18, 2023, the Government informed URS that it would not complete production of all responsive Government documents that it had initially withheld for potential privilege by the January 10, 2024 deadline (and the parties informed the Court of this in the November and December joint status reports), this was not communicated to URS or the Court prior to the entry of the Discovery Scheduling Order.

*Fourth*, prior to April 5, 2024, the Government never requested or suggested that it be excused from reviewing relevant documents that it was withholding as potentially privileged (or from producing the subset of those documents that were determined to not be privileged). This proposal comes long after URS has dedicated the time and resources to finish its own privilege review and production—and long after the deadline by which the Government was supposed to complete its document production.

*Fifth*, the Government's "metadata-only arrangement" would unfairly shift the burden for the Government's privilege review to URS. The Government has already shifted a substantial portion of its discovery obligation in this case to URS: the Government has produced 8.25

million documents (over 36 million pages) in this litigation *without* reviewing those produced documents for responsiveness.  Given that URS has already taken on the significant burden in terms of time and expense of doing the Government's responsiveness review to move this case along, it should not also be required to assume the Government's burden of performing its privilege review by studying a metadata log to try to identify potentially non-privileged documents.

*Finally*, as to the Government's "second option" (discussed below), URS continues to seek ways to proceed in an expeditious manner and is willing to consider reasonable limitations if there are logical individuals to exclude from the privilege review, but the Government has not made any specific proposals to date.

**The Government's Position.**  The Government shares URS's desire to have depositions proceed in an orderly manner.  We respectfully submit, however, that URS's request for a "firm" May 15, 2024 deadline to complete a linear privilege review (including logging and curated redactions) on approximately 50,000 documents is not doable.  The proposed May deadline is, in effect, a request that the Court compel the Government to produce a wide assortment of its most presumptively privileged communications without sufficient, if any, meaningful review.

That outcome is unwarranted.  The Government has endeavored to address its privilege withholdings as efficiently and expediently as possible, while doing its part to keep URS apprised of its approach, progress, and challenges.  This includes disclosing numbers, informing URS of its decision to "let[] go a large amount [of documents that were provisionally withheld on privilege grounds] under 503" in the form of "very large privilege kick outs" in the weeks following January 10, 2024, which are denoted in the table above, and informing URS that the

6

Government would run "TAR for responsiveness" on the "400,000" higher-priority documents that it continued to withhold on privilege grounds to try to make privilege review manageable.

These facts show that the issue the parties are attempting to resolve does not arise from inaction. The problem arises from the size of the case itself, which covers a broad range of issues and consists of documents that span decades. The Government has produced approximately 8.25 million documents (over 36 million pages), spanning 111 custodians across three Federal agencies. Discovery that broad unavoidably expands the volume of documents that implicate (and must be culled and reviewed for) privilege. This is especially true in a case where contract and regulatory disputes were often hotly disputed, and attorneys from various agencies were asked to weigh-in at many turns. Given these facts, we explained our challenge to URS and utilized reasonable steps to pare down our privileged withholdings. And when it became clear that approximately 50,000 documents would remain privileged even after these efforts, we immediately notified URS and tried to reach a compromise to arrive at a solution. We offered several limiting proposals, but none were agreed upon.

URS advocates for a linear review (including redactions) on approximately 50,000 documents, which we estimate would take us at least several more months and require anywhere between one to two thousand hours of attorney review. This case is already one of the most heavily staffed cases in our Justice Department section, and it presently consists of four attorneys—undersigned counsel and three other Department attorneys, one of whom is presently on long-term leave until July 2024, and all of whom independently maintain their own heavy case dockets. Imposing that burden, particularly on the condensed timeframe proposed by URS, would have far-reaching consequences on the entire section especially given present resource constraints. If the Court is at all inclined to accept URS's request of a linear privilege review on

all 50,000 documents, we respectfully request the opportunity to submit short, contemporaneously filed briefs on the matter so that the Court can fully consider the parties' positions before rendering a decision.

Alternatively, we offer two proposals here for the Court's (and URS's) consideration.

We first propose a provisional metadata-only arrangement, whereby we provide URS with the metadata (*i.e.*, the dates, custodians, authors, recipients, and subject lines, if any) of the documents that will continue to be withheld when TAR review is complete. We propose that URS review the log and select a limited number of documents, perhaps up to 2,000, that we should review, redact, and log for privilege, thereby avoiding the burden of doing such time-intensive work on approximately 50,000 documents. We believe that such a privilege review process (and final screening) could plausibly be completed within four weeks of URS providing us with its selection.

A second option could include limiting privilege review by category or group or perhaps custodian. If that route seems agreeable, once TAR review is complete, we are more than willing to share which subjects or custodians are most affecting our withholdings, and that might enable the parties to remove certain topics from requiring review and confine privilege review to a far smaller set of documents.

### III. Schedule Adjustment to Avoid Prejudice

The matter of privilege aside, the parties agree that URS should not be prejudiced based upon the parties' present impasse. To avoid placing URS in the position of being required to conduct depositions without having had the chance to meaningfully review the Government's more recent privilege kick-outs as (which are voluminous) and having to possibly re-open

8

depositions subsequent to such review, the parties submit that the deadline for the close of fact discovery, which is currently set for July 3, 2024, should be extended.[2]

The current schedule provides 175 days—from January 10, 2024 to July 3, 2024 (the existing deadline for the completion of fact discovery)—to conduct fact depositions following the completion of the Government's document production. The parties propose shortening the period for fact depositions by 30 days, to 145 days, following the Government's (and URS's) completion of privilege-based productions on any new deadline set by the Court, in an effort to proceed as quickly as possible to resolution. The parties have already exchanged names of some likely deponents. Each party expects to depose approximately 10-15 witnesses, for a total of approximately 20-30 depositions—some of which may run (either by order or stipulation) beyond a single day.

---

[2] Normally, under Rule 6(b), "a party must merely establish 'good cause' to secure an extension of time—a modest showing that might be met by any legitimate reason for delay." *Anham FZCO v. United States*, 123 Fed. Cl. 386, 388 (2015). Courts have noted that requests to extend the deadline for discovery made "before the expiration of the period a party seeks to enlarge[] are assessed under a liberal reading of RCFC 6(b)." *CellCast Techs., LLC v. United States*, No. 15-1307C, 2018 WL 4088503, at *1 (Fed. Cl. Aug. 28, 2018); *see also Loveladies Harbor, Inc. v. United States*, 15 Cl. Ct. 375, 381 (1988) ("Rule 6(b) motions should be construed liberally" and "extensions of time should be granted or denied upon consideration of all the circumstances").

Respectfully submitted,

| | |
|---|---|
| s/ Charles C. Speth<br>CHARLES C. SPETH, *Counsel of Record*<br>WILMER CUTLER PICKERING<br>   HALE AND DORR LLP<br>2100 Pennsylvania Avenue N.W.<br>Washington, D.C. 20037<br>Telephone: (202) 663-6000<br>Facsimile: (202) 663-6363<br>Email: charles.speth@wilmerhale.com | MICHAEL D. GRANSTON<br>Deputy Assistant Attorney General<br><br>PATRICIA M. MCCARTHY<br>Director<br><br>s/ Lisa L. Donahue<br>LISA L. DONAHUE<br>Assistant Director |
| ANDREW E. SHIPLEY, *Of Counsel*<br>WILMER CUTLER PICKERING<br>   HALE AND DORR LLP<br>2100 Pennsylvania Avenue N.W.<br>Washington, D.C. 20037<br>Telephone: (202) 663-6000<br>Facsimile: (202) 663-6363<br>Email:<br>andrew.shipley@wilmerhale.com | s/ Meen Geu Oh<br>MEEN GEU OH<br>Senior Trial Counsel<br>IOANA CRISTEI<br>EBONIE BRANCH<br>DANIEL BERTONI<br>Trial Attorneys<br>Commercial Litigation Branch<br>Civil Division<br>Department of Justice<br>P.O. Box 480<br>Ben Franklin Station<br>Washington, D.C. 20044<br>Telephone: (202) 307-0184<br>Meen-Geu.Oh@usdoj.gov |
| *Attorneys for Plaintiff AECOM Energy & Construction, Inc.* | *Attorneys for Defendant*<br><br>*Of Counsels:*<br><br>BRANDON MIDDLETON<br>Chief Counsel<br>BRADY L. JONES, III<br>Assistant Chief Counsel for Acquisition and Litigation<br>SKY W. SMITH<br>Trial/Procurement Counsel Office of Chief Counsel<br>Environmental Management Consolidated Business Center |
| Dated: April 15, 2024 | U.S. Department of Energy |