1            IN THE UNITED STATES COURT OF FEDERAL CLAIMS

2

3    AECOM ENERGY AND CONSTRUCTION,        )

4    INC.,                                 ) Case No.

5            Plaintiff,                    ) 20-2016C

6                 vs.                      )

7    THE UNITED STATES OF AMERICA,         )

8            Defendant.                    )

9

10

11

12                      Via Teleconference

13                  Thursday, April 18, 2024

14                        10:00 a.m.

15                     Status Conference

16

17

18

19

20          BEFORE: THE HONORABLE MOLLY R. SILFEN

21

22

23

24

25    Transcribed by:  Elizabeth M. Farrell, CERT

```
 1                    A P P E A R A N C E S

 2

 3   ON BEHALF OF THE PLAINTIFF:

 4            CHARLES SPETH, ESQ.

 5            ERIK F. SWABB, ESQ.

 6            Wilmer Cutler Pickering Hale and Dorr, LLP

 7            2100 Pennsylvania Avenue

 8            Washington, DC 20037

 9            (202) 468-6632

10            charles.speth@wilmerhale.com

11

12   ON BEHALF OF THE DEFENDANT:

13            MEEN GEU OH, ESQ.

14            IOANA MEYER, ESQ.

15            U.S. Department of Justice - Civil Division

16            Post Office Box 480

17            Ben Franklin Station

18            Washington, DC 20044

19            (202) 353-0516

20            p.davis.oliver@usdoj.gov

21

22   ALSO PRESENT:

23        Sky Smith, Counsel, Department of Energy

24

25
```

AECOM Energy v. USA                                          4/18/2024

```
 1                P R O C E E D I N G S
 2                   -    -    -    -    -
 3          (Proceedings were called to order.)
 4          THE CLERK:  The United States Court of Claims
 5   is now in session, the Honorable Molly R. Silfen
 6   presiding.
 7          Can we have counsel please introduce yourselves
 8   for the record, beginning with the Plaintiff and then
 9   counsel for the Defendant, and then we can have agency
10   counsel as well.
11          MR. SPETH:  Sure, Charles Speth from WilmerHale
12   for URS.
13          MR. SWABB:  Erik Swabb from WilmerHale for URS.
14          MR. OH:  And for the United States, Meen Geu
15   Oh, and with us on the line virtually is Ioana Meyer, and
16   Sky Smith is here for the Department of Energy.
17          THE COURT:  Okay.  Thanks.  So, yeah, so we can
18   get started.  It's -- and I guess it's still captioned
19   AECOM Energy and Construction vs. the United States, and
20   it's Number 20-216.
21          So in the latest status report, the parties
22   requested this status conference just to talk about the
23   latest developments and discovery disputes.  So I'll just
24   -- from what I gather, the discovery process is
25   progressing, the Government hasn't been able to complete
```

AECOM Energy v. USA                                    4/18/2024

1    the privilege review process on time, and the parties now

2    agree that July 3rd -- that the July 3rd deadline is no

3    longer feasible to complete fact discovery, but can't

4    agree on the best way to proceed or on a new schedule.

5            And it sounds like URS would like me to order

6    the Government to complete the privilege review and

7    production by May 15th and is willing to reasonably limit

8    the scope of the review and production.  The Government

9    thinks May 15th is not feasible because of the magnitude

10   of the case and the volume of documents and that it will

11   take at least several more months to complete the review

12   process given the way things have been going.

13           And then I gather the Government's offering two

14   options.  One is a metadata only production that allows

15   URS to choose some documents the Government would review

16   more thoroughly and that URS doesn't like that approach.

17           The second one is some category or custodian

18   sort of singling groups of people.  URS seems more

19   amenable to that, but I guess there aren't any specific

20   proposals yet.  And then both parties want 145 days from

21   whenever the production is complete to end -- to close

22   that discovery period.  And then does that all sound

23   correct?

24           MR. SPETH:  That's generally correct.  Can I

25   expound on one thing?

AECOM Energy v. USA                                        4/18/2024

```
 1            THE COURT:  Of course.
 2            MR. OH:  Which is I think in the spirit of
 3    reciprocity, we wouldn't like categorically oppose a
 4    document-by-document review of the 50,000 documents
 5    currently withheld on privilege.  It just, in our mind,
 6    couldn't be accomplished in any reasonable time frame.
 7    That's the big concern.  So I think the reason why we
 8    approached URS with alternatives was if we want to
 9    fashion a reasonable timeline, it has to come with some
10    sort of limitation.  So that's why the alternatives were
11    proposed as, okay, if we went to sort of truncate the
12    period, we can do that.  But it would have to be by some
13    sort of stipulation of some kind, so we proposed several
14    options.
15            Obviously, Judge Silfen, you know, the metadata
16    only log was -- you know, we weren't agreeable to that,
17    but, you know, the category-based exclusions was one
18    option that was on the table.  Mr. Speth and I discussed
19    one yesterday.  It didn't seem like we could reach an
20    agreement on that.  So I guess it's really sort of two
21    options on the table.  It's either the full thing, but
22    it's going to take a long time, and then if it's a
23    shorter time, we can do it, but it would have to come
24    with some sort of limitation.  So that's the general
25    categorical buckets.
```

AECOM Energy v. USA                                              4/18/2024

1              THE COURT:  Okay.  URS?

2              MR. SPETH:  Your Honor, we just think the

3     Government needs a firm date.  I mean, we've reviewed

4     putting -- either for privilege or responsiveness, we've

5     reviewed 550,000 documents in this case.  We started our

6     review back in the spring of 2022.  I appreciate that

7     there are 50,000 documents.  Some of those, maybe the

8     Government can narrow the privilege -- those are just

9     documents that --

10             (Pause in the proceedings.)

11             MR. SPETH:  Those are documents that are --

12     sorry, should I continue?

13             THE COURT:  Yes, please.  Just ignore that.

14             MR. SPETH:  Okay.  Those are documents that are

15     identified as responsive through the Government's TAR

16     review process, but are hitting on some -- you know, some

17     key word.

18             THE COURT:  Mm-hmm.

19             MR. SPETH:  Or I'm not sure, maybe they are

20     also potentially tied to a custodian who may have

21     privilege documents.

22             THE COURT:  Mm-hmm.

23             MR. SPETH:  So there may be ways that the

24     Government can narrow the keywords that are catching

25     those and reduce some of them just with a clawback.

AECOM Energy v. USA                                      4/18/2024

1    They've done that previously.  There is a clawback in the
2    case, so if they inadvertently produce a privileged
3    document, they can claw it back.  So they may be able to
4    limit it.
5            And 50,000 just isn't that many documents.  I
6    mean, if you're looking at, you know, 20 documents an
7    hour with a -- you know, you can -- with -- at times,
8    we've had 25 reviewers on the case.  I mean, that's a
9    matter of weeks, not a matter of months to accomplish
10   that is our position.  And they may -- the Government --
11   it's already been a very long time and, you know, our
12   position is they probably do need a firm deadline to, you
13   know, marshal the resources internally to get this done.
14           THE COURT:  Okay.  All right.  So I guess I
15   have a few questions for both of you.  So for Mr. Oh,
16   have you asked agency counsel to help with the privilege
17   (inaudible) process?
18           MR. OH:  Yes.  So for vast portions of the
19   review, at least since I got on the case in November,
20   they have been sort of allowing us on the -- four other
21   DOE attorneys other than my agency counsel, Mr. Smith,
22   which we greatly appreciate.  We can't get 25.  Like we
23   just don't have that.  I've had to ask for a contract
24   review team.  It's just not within our budget constraints
25   at the moment.

AECOM Energy v. USA                                    4/18/2024

1          So there are presently four DOJ attorneys
2     assigned to the case.  We have, at various points, done
3     review, but it's always been sort of on an ad hoc basis
4     because we maintain our own independent case docket.  So
5     it's not like once you're assigned to this case, you
6     don't get anything else.  It's sort of you're juggling
7     everything else.  So it's been difficult, I think, on the
8     resource front and so I understand, you know, Mr. Speth
9     can get 25 reviewers on a case like this, but we just
10    can't.  Believe me, Judge Silfen, I have tried.
11         The only reason I called Mr. Speth on April 5th
12    was it has sort of been the looming challenge ever since
13    I took over the case, is we had to get out these
14    productions and then we had two million documents
15    recalled on privilege.  And the first thing that we did
16    was we did the keyword reduction, not because we felt
17    comfortable doing it, because that was the only way to
18    tackle, you know, withholdings of that size.
19         So, you know, prior to -- leading into, you
20    know, this deadline of January 10th, we started this
21    conversation where I wanted to be as transparent as
22    possible with Mr. Speth about what we had to do.  I told
23    him it was our challenge.  I think I might have even said
24    I have no idea how I'm going to get this done, but here's
25    my plan.  We're going to do these very large privilege

AECOM Energy v. USA                                      4/18/2024

1    kickouts.  We're going to use TAR.  We're going to get

2    people on board.  We're going to try to get it done as

3    fast as possible.

4            Leading into April 5th, when I realized it just

5    wasn't going to happen on the timetable that, you know,

6    that was set by the Court, I approached him with, you

7    know, these limitation proposals because I didn't see it

8    getting done otherwise.  So I'm sort of -- I think I was

9    hopeful at first and, at some point, it was just -- you

10   know, unless we get a stipulation, we can't do it.  You

11   know, this status conference is, I think, sort of my call

12   as to maybe we should just go to the Court.  I didn't

13   want it to be a contested thing where we're filing

14   motions and there's contested briefing.  I think

15   everyone's busy, so I thought this was sort of the

16   easiest way to get ahead of it.

17           And, again, I think I'll put this in two

18   buckets.  We can do the 50,000-document review.  DOE says

19   it can continue to cycle in five new attorneys, including

20   my agency counsel, on loan, but if we're going to do that

21   process, it's going to take months, absent some sort of

22   limitation.

23           THE COURT:  I guess I'm a little puzzled about

24   the -- like 50,000 doesn't strike me as that many.  I

25   mean, I know it's -- you know, it takes a lot of people,

AECOM Energy v. USA                                    4/18/2024

1    but doesn't DOJ sort of routinely get document review
2    projects of that size?  I'm just trying to --
3              MR. OH:  I think if it were a straight-up
4    review, that could be one thing because we could do TAR
5    on that.
6              THE COURT:  Mm-hmm.
7              MR. OH:  But this is a set that we've already
8    had TAR run on.  Now, we're doing privilege review and
9    privilege review is much more scrutinized and exacting.
10   So I think when Mr. Speth says 20 documents an hour,
11   that's actually a pretty fair estimate.  Did you say 20
12   documents an hour?
13             MR. SPETH:  I did.  Sorry.
14             MR. OH:  Yeah, yeah, 20 documents, that's
15   actually a pretty fair estimate we're envisioning here.
16   So what we've done is, you know, we're doing the math in
17   our head.  We have five, maybe six reviewers at a time,
18   again, with other case obligations doing about four hours
19   of review a day over a series of months.  And to get
20   through that 50,000 documents is probably going to take
21   us five months.
22             THE COURT:  Okay.  Okay.  And then one other
23   question for you, Mr. Oh.  So I'm curious about the
24   metadata being -- even though it sounds like that's kind
25   of a nonstarter, but URS says, in general, that the

AECOM Energy v. USA                                    4/18/2024

1    position is novel in civil litigation, and I can't say

2    that I've seen it before sort of like not actually

3    reviewing the -- for privileged documents.  But do you

4    have examples where the privilege review was limited,

5    like on the metadata?

6              MR. OH:  On the metadata front, I will say that

7    folks in our section have used that approach.

8              THE COURT:  Okay.

9              MR. OH:  It's been reciprocal, though.  It's

10   been stipulated to by the parties.  I don't know of an

11   instance where a court has ordered it at the objection of

12   a party.  I'll put it that way.  So that's why I

13   approached Mr. Speth with that idea first.  There have

14   also been instances where the parties have just

15   stipulated not to do logs at all.  And so parties can do

16   that by stipulation, but, again, I don't know that a

17   court has ever ordered it.

18             There is a third option that we discussed about

19   category-based privilege logging and review and just sort

20   of excluding certain populations and I have seen cases

21   where courts have ordered --

22             THE COURT:  Yeah.

23             MR. OH:  -- that sort of (inaudible).  That

24   said, I mean, I take Mr. Speth's point.  Like his side

25   has done all the work, right?  So I don't want to be here

AECOM Energy v. USA                                   4/18/2024

```
 1    imposing a position where it doesn't -- I want to be fair
 2    where it's reciprocal on both sides.  So, you know, I
 3    think that's why we're proposing these alternatives -- as
 4    alternatives (inaudible) just sort of the timing issue is
 5    the big thing right now.
 6              THE COURT:  Right.  Okay.  And then I have some
 7    questions for you, but anything you want to say
 8    (inaudible)?
 9              MR. SPETH:  Yeah, just a couple things.  I
10    mean, one, it's not so much -- I mean, it's easy to think
11    about this in terms of a privilege log, but it's really
12    that there are 50,000 documents that may not be
13    privileged or portions of those documents may not be
14    privileged and they should be produced.  You know, our
15    own privilege review, we also, of course, used keywords
16    to screen productions before they went out, held them
17    back, and then did a privilege review of those documents,
18    a lot of which -- you know, many thousands of which ended
19    up being produced and are relevant documents in the case.
20    So it's not just about the form of a log.
21              And then the other thing I would just say is I
22    don't think this is -- this shouldn't be viewed as sort
23    of an all-or-nothing, well, if we put them to the burden
24    of -- which is just their burden under Rule 26, of
25    reviewing these documents and producing the nonprivileged
```

AECOM Energy v. USA                                              4/18/2024

1    ones, you know, it should take five months.  I think
2    there has to be some -- there should be some steps that
3    the Government does to reduce this population that needs
4    to be manually reviewed and subject to clawback, increase
5    resources, prioritize, you know, documents such that, you
6    know, the bulk of it is coming out within a reasonable
7    period of time, the higher -- you know, the custodians
8    that may be deposed are coming out.  I think there are
9    steps the Government could take to -- you know, it's sort
10   of like the 80/20 rule -- to get most of this out, you
11   know, in a month or so.
12              THE COURT:  Mm-hmm.  Okay.  And just out of
13   curiosity, for the baseline of this, like did the parties
14   already agree, like not -- to not log like post-filing
15   privilege communications and things like that?  Was that
16   like part of the --
17              MR. SPETH:  We haven't discussed -- we -- I
18   mean, we only produced -- we had a cutoff date of our
19   production and I had assumed -- when it was prior to
20   filing and I assumed we would log up through that date.
21              THE COURT:  Okay.
22              MR. SPETH:  But I haven't --
23              MR. OH:  I think we have discussed the idea of
24   just producing without the logs, like doing the privilege
25   review, but not necessarily doing the logs.

AECOM Energy v. USA                                    4/18/2024

```
 1              THE COURT:  Mm-hmm.
 2              MR. OH:  That could help a little bit.  I mean,
 3    it doesn't help tremendously, but that was sort of
 4    something that was always on the table.
 5              THE COURT:  Okay.
 6              MR. OH:  So it could help like on the tail end
 7    after the privilege review is done, you know, populating
 8    and making the log, you know, extends things.
 9              THE COURT:  Yeah.  So are there -- like do you
10    have a sense of like are there custodians who like -- or
11    some way of limiting what would need to be logged or
12    whether these categorical logs would be possible or
13    anything along those lines?
14              MR. SPETH:  I mean, we haven't discussed any
15    proposals yet.  I raised to Meen Geu -- to Mr. Oh that I
16    would be comfortable not logging, you know,
17    communications with the Department of Justice -- between
18    the Department of Energy and the Department of Justice
19    given the timing.  I mean, I don't truthfully think that
20    that will limit our universe by much.  So I think we'd
21    have to understand sort of more about who the custodians
22    are and, you know, what their proposed categories are in
23    terms of whether there might be entire -- you know,
24    whether we could use a categorical log.
25              THE COURT:  So I guess that brings me back to
```

AECOM Energy v. USA                                    4/18/2024

1      the metadata question.  So on the metadata proposal, are

2      you concerned about it in principle or are you concerned

3      about the sort of limit on the -- like Mr. Oh's proposal

4      had like a limit on the number of documents you could

5      then request once you've seen the metadata?  Is it a

6      limit or is it a --

7                MR. SPETH:  It's both.

8                THE COURT:  Okay.

9                MR. SPETH:  I mean, certainly, the limit, but

10     also, I mean, it's basically imposing on us the burden

11     and it's imposing on us a burden that I don't even think

12     we can do.  I mean, I don't think we would have the

13     information from a metadata log to try to, you know,

14     divine the content of these communications or identify

15     the ones that we would want them to take a more manual or

16     -- you know, to review.  And the Government has produced

17     -- has done no responsiveness review in this case.

18                So starting in January 2023, when the

19     Government went back to do all of the collection --

20     recollection and production, they have not been doing a

21     responsiveness review.  So they produce eight million

22     documents to us without any responsiveness.  They've put

23     that burden entirely on us, which we expected in the vein

24     of moving the case along as quickly as possible.  And so

25     we don't think that there should be an additional burden

AECOM Energy v. USA                                    4/18/2024

1   here put on us, particularly because I don't think we'd

2   be able to successfully understand enough about these

3   documents from a metadata log.

4           MR. OH:  Can I respond to that, Judge Silfen?

5           THE COURT:  Sure.

6           MR. OH:  And I don't want it to be like -- my

7   understanding -- again, this all predates me, so I don't

8   know exactly -- is that when we initially produced in

9   response to the RFPs request for production, that we

10  tried to cure a -- how we were producing, you know,

11  foldering the documents that were responsive to each of,

12  I think, like 100 requests, and we actually tried to log

13  it that way.  And that was viewed by you guys as

14  deficient.  And so I think in the spirit of just like

15  resolving the issue, you proposed custodians and key

16  terms and my predecessor agreed to that.

17          But like the fallout of that is it just causes,

18  you know, a dragnet to run through the systems and that's

19  what causes the eight million documents is we're running

20  the key terms and the number of custodians that, you

21  know, you all provided.  So that's what's causing this.

22          Now, on the back end, I think -- I wish that

23  hadn't been done because any time you grow the population

24  of the production by that size, your privilege

25  withholdings grow by a correlate of size and that's what

AECOM Energy v. USA                                    4/18/2024

1    led to the two million.  So I'm not like, you know,

2    saying -- it's just a problem right now and it's my

3    problem, right?  I have to deal with it.  I've said that

4    repeatedly.  But it's -- it's going to take time based on

5    the size of the production and the number of custodians,

6    how expansive it was across three agencies.  So that's

7    all I wanted to add.

8                THE COURT:  Do you have a sense of the

9    custodian -- like the custodians you care more about or

10   less about?  I don't need names, but just --

11               MR. SPETH:  I mean, I think it's difficult

12   because, I'll be honest, I think both parties are trying

13   to -- given how long it's been, are trying to limit the

14   universe of depositions that need to happen.  I think

15   there's going to be a lot of importance on the 30(b)(6)

16   witness for the agency and for EPA, such that both sides

17   can try to limit the number of fact witnesses.  So I

18   think it's difficult in that respect.  I think that's

19   very complicating in terms of, you know, understanding --

20   being able to exclude agency documents based on certain

21   custodians.  That said, we have exchanged names of, you

22   know, likely trial witnesses in an effort to identify who

23   -- you know, who we need to depose.

24               THE COURT:  Mm-hmm.

25               MR. SPETH:  And we're -- you know, I think

AECOM Energy v. USA                                              4/18/2024

1    we're both in the 10 to 15 sort of witness ballpark in
2    terms of likely -- you know, likely witnesses that would
3    need to be deposed.
4              THE COURT:  So if you got sort of the documents
5    from those witnesses first or -- would that be useful or
6    is that --
7              MR. SPETH:  I think we could prior --
8    potentially, we could prioritize those, but we would need
9    to have the ability to reopen the depositions of the
10   30(b)(6) and really, you know, other witnesses based on,
11   I think, a production of documents.  I mean, any -- I
12   think any -- to the extent where we're being required to
13   go forward with depositions prior to their completing
14   this process, we will ask for the ability to reopen
15   depositions at the Government's expense.  That, I think,
16   is sort of a minimum safeguard that we should be
17   afforded.
18             THE COURT:  Okay.  Mr. Oh, any thoughts for you
19   on --
20             MR. OH:  On that?  I would have to resist that
21   based on budget constraints.  I think --
22             THE COURT:  I mean, it sounds like that
23   everybody wants to finish the production first.
24             MR. OH:  If that's the risk, yeah, I would say
25   we need to finish the documents first.

AECOM Energy v. USA                                         4/18/2024

```
 1              THE COURT:  Okay.  So I guess I'm -- I mean,
 2    unless the parties can agree on a way to limit the
 3    universe of documents in one of the ways the Government
 4    suggests or in some other way, I mean, I'm inclined to
 5    have DOJ review all the documents and set a date for that
 6    review to be done, probably later than May 15th.  That
 7    sounds like it's not feasible.
 8              But, I mean, does anybody have a date -- so, I
 9    mean, my initial inclination was maybe sometime like the
10    end of June, but I'm interested in both sides' reactions.
11              MR. OH:  Yeah, I called Mr. Speth yesterday and
12    I -- you know, after running through our calculations
13    with the number of reviewers that DOE could help to
14    assist with the review, again, that went to my
15    calculation of half their workdays over a number of
16    weeks.  We've got a computation of 17 weeks based on
17    that.  And that was without logs and things like that.
18    So I said five months.  So I told him late September and
19    that would be September 29th for the completion of the
20    privilege review.
21              THE COURT:  Okay.  And do you -- I mean, if --
22    well --
23              MR. SPETH:  I mean, that's an eight-month -- a
24    greater than eight-month delay on an already very delayed
25    case, in large part because of the Government's prior
```

AECOM Energy v. USA                                    4/18/2024

1    collection.  And I understand it predated Mr. Oh, but the

2    Government's prior collection methods and need for re-

3    collection has already significantly delayed.  That would

4    be an eight-month delay.

5            This is -- I mean, it's -- you know, the

6    prejudice that's occurring is not theoretical.  Three

7    witnesses have died since this case was filed, one

8    government witness, two URS witnesses.  The Government

9    has informed us they can't find a key DOE witness.  You

10   know, memories are fading fast and, of course, you know,

11   there is a significant, you know, financial sum at stake

12   that, you know, is not being recovered.  So there's

13   tremendous prejudice resulting from this.  So that type

14   of delay, I think is just unacceptable to us.  We would

15   need some -- we would request some greater urgency on the

16   part of the Government.

17           THE COURT:  Okay.  Let's think.  I'm just

18   trying to think about the -- I mean, I think until the

19   end of September sounds like to me.

20           MR. OH:  Judge Silfen, I am surprised to hear

21   him saying that.  I mean, one thought, if the end goal is

22   to get the entire discovery process done sooner -- I just

23   -- I've tried everything to get more reviewers.  I've

24   tried to get a contract -- it's just --

25           THE COURT:  I mean, the order might help.

AECOM Energy v. USA                                    4/18/2024

```
1              MR. OH:  It might help.  I'm sure it will.  But
2    I'll just -- I have tried.
3              THE COURT:  Yeah.
4              MR. OH:  Is that if the end goal is to
5    eventually get this thing, you know, through the
6    discovery process, summary judgment briefing, there are a
7    lot of deadlines here where I personally would vastly
8    prefer that those deadlines be shortened.  For example,
9    you know, we proposed 145 days for depositions and I
10   think that's a lot, but at the same time I want to be
11   fair to Mr. Speth.  So I'm happy to agree to that.  But
12   if there's any time that could sort of be reduced, some
13   time could come from there.
14             And then there's other subsequent -- like I
15   wouldn't take it away from expert discovery, for example,
16   because I think those reports are going to take some
17   time.  But there are various points in here where I think
18   we can, you know, take out a little bit and that could
19   make things a little bit more -- at least on the back
20   end, if we're looking at the totality of the schedule,
21   run a little bit quicker.
22             THE COURT:  Right.  I mean, I guess to go back
23   to, although neither party liked it at all, the idea of
24   having depositions going alongside production.  I wonder
25   if there are ways to sort of, you know, figure production
```

AECOM Energy v. USA                                          4/18/2024

1   with certain witnesses and then start taking depositions
2   of those witnesses, I mean, with the caveat, I suppose,
3   that you may have to reopen that deposition.  But
4   (inaudible) not, right, like if you've got all the
5   documents from them ahead of time.  So I don't --
6            MR. SPETH:  I mean, I --
7            MR. OH:  No, go ahead, go ahead.
8            MR. SPETH:  I think that sort of depends on how
9   quickly they can get a -- I mean, if they could get 80
10  percent of the documents out in a month or in six weeks,
11  I -- and I'm sorry, I don't under -- I can't follow the
12  math.  I mean, if you can review 20 documents an hour,
13  you know, it seems like they should be able to, you know,
14  move more quickly than five months.  But it's -- but if
15  we could -- you know, if the documents could be largely
16  produced by the end of -- you know, by mid-June or at the
17  end of June, as you said, such that we could go forward
18  with a right to reopen if something is -- material is
19  produced after that, I mean, we could -- that would be
20  something we could do.  But I'd want some assurance that
21  there was -- that they were actually able to produce the
22  bulk -- you know, the bulk of it by then.
23            THE COURT:  Mm-hmm.
24            MR. OH:  I'm looking at 80 percent, I'm still
25  thinking four months.  I mean, that's -- so, look, Judge

AECOM Energy v. USA                                    4/18/2024

 1    Silfen, I think your idea is fine because I think even

 2    when we agreed to this initial schedule setting

 3    substantial production of January 10th, the idea was we

 4    would still have privilege withholdings that would be

 5    trickled out after that January 10th date.  And so it

 6    wasn't the thought that you couldn't possibly get a

 7    document after January 10th, while we're in that

 8    deposition time frame.  It was just that most of the

 9    stuff would be out.

10         And so I think if we're looking at some overlap

11    between the deposition period and, you know, trickling

12    out of documents through this privilege -- you know,

13    final privilege review process, I think that's fine.  And

14    I don't know what that looks like, but if it's like --

15    you know, and I don't mind prioritizing custodians or

16    doing anything of that nature.  I can do that.  But if

17    it's, you know, a percentage, like 80 percent of the

18    privilege review will be done by June, you know, based on

19    what I'm looking at as the math, I don't see how that's

20    possible.

21         THE COURT:  I mean, the timing is not that

22    different.  If it's the end of June, you know, it's not

23    four months, but it's two and a half.

24         MR. OH:  Just so -- we're not done with TAR

25    review yet.  There was an outstanding FOIA.  So our TAR

AECOM Energy v. USA                                    4/18/2024

1    review was done.  There was an outstanding FOIA.  Mr.

2    Speth and I agreed to produce it through discovery rather

3    than through the FOIA process.  We thought the documents

4    would be out quicker.  It would obviously cost his client

5    less money and we could just be done with it.

6                   THE COURT:  Mm-hmm.

7                   MR. OH:  So we threw that back into the TAR.

8    That was the agreement.  So we have to wait for those

9    documents to be processed.  I'm anticipating TAR review

10   will be done on May 1st.

11                  THE COURT:  Okay.

12                  MR. OH:  So they have to be thrown back into

13   the system, see if it destabilizes the TAR.  If it does,

14   we've got to do a little bit more review.  Hopefully, it

15   doesn't, and I think that's what I'm expecting.  So

16   that's where the TAR stands.  But, yeah, the privilege

17   review of the TAR documents cannot begin until the TAR is

18   stable.

19                  THE COURT:  Okay.  So why don't we plan on --

20   why don't we set --

21                  MR. SMITH:  Your Honor?

22                  THE COURT:  Oh, yes?

23                  MR. SMITH:  Can I add one other point of

24   information?

25                  THE COURT:  Yes.

AECOM Energy v. USA                                              4/18/2024

1              MR. SMITH:  Throughout this process, especially
2      in the privilege review that we've been doing, I've been
3      the primary reviewer.  So of those four or five
4      attorneys, I'm doing the lion's share of the review.
5      Part of the math also needs to take into account that I
6      am a military member and I'm going to be going on orders
7      for 45 to 60 days starting in about a week, which is
8      going to slow down that process.
9              THE COURT:  Okay.  I mean, it sounds like then
10     there -- hopefully, you can get more people for your team
11     or more people's time, especially if you have multiple
12     people out.
13             MR. OH:  Yeah, I think Mr. Smith was the full-
14     time designee for this particular case.  We can get like
15     part-time people and Mr. Smith has a deal where he has
16     gotten us, you know, four additional to help with this
17     process.  Obviously, there's four DOJ attorneys on this
18     case.  Again, it's going to be hard to devote full-time
19     with a full, you know, docket of cases going.
20             THE COURT:  Mm-hmm.
21             MR. OH:  But all the math that we've done
22     accounts for that sort of -- those sort of limitations.
23             MR. SPETH:  And the Department of Justice uses
24     contract attorneys for review.  I understand Mr. Oh has
25     requested that and it's been denied thus far.  But it's

AECOM Energy v. USA                                          4/18/2024

1    certainly -- I don't think there's anything that would

2    bar it if it was required.

3                THE COURT:  Okay.

4                MR. OH:  I can say that was the first thing I

5    asked for and it was quickly, uncomfortably fast.  The

6    budget -- I don't want to say too much on this, but the

7    budget constraint is very serious right now.

8                THE COURT:  Mm-hmm.

9                MR. OH:  You can -- yeah, I'll just leave it at

10   that.

11               THE COURT:  Yeah.  Okay.  Well, I guess -- I'm

12   still inclined to set a June 28th date to -- for the

13   Government to complete or substantially -- I don't know

14   what the right sort of way to phrase it is to both, you

15   know -- if the Government like absolutely needs the

16   flexibility to extend it, we can, but I don't want -- but

17   I want DOJ to sort of put the resources it needs to put

18   into getting it done by then.  So I don't know what the

19   best way to like frame that is.

20               MR. OH:  I don't know either, Judge Silfen.  I

21   don't want to propose anything and then, you know, have

22   it sort of --

23               THE COURT:  Right, right.  Okay.  Any thoughts

24   on your end, Mr. Speth?

25               MR. SPETH:  Sorry, I was just looking at the

AECOM Energy v. USA                                     4/18/2024

1   calendar.  I think that's ten weeks from now.  I mean,
2   that seems like a very long time that they should be able
3   to accomplish this.  The only thing I would ask for is
4   that there is -- and we can do this -- I can do this; I
5   don't want to burden you -- but there should be some
6   safeguards in terms of understanding how they're going to
7   accomplish this to make sure we're not back here at the
8   end of June and it hasn't been accomplished, I mean, in
9   terms of, you know, what the pace is going to be and how
10  -- how they're going to get through this amount.
11          THE COURT:  And I want to make sure that the
12  parties are working together on it and if there's, you
13  know, ways to streamline it, things that you can sort of,
14  you know, either, you know, skip -- well, like skip
15  privilege logging for various specific people or, you
16  know, the categorical logging or anything where, you
17  know, you can sort of accommodate because it's --
18  obviously, DOJ does have constraints and so like anything
19  you can do to sort of work together on that would be
20  good.  I mean, I don't want to come back here at the end
21  of June and, you know, it's almost done, but whatever.  I
22  don't want to deal with that again.
23          MR. SPETH:  Understood.
24          THE COURT:  Okay.  So I think what then --
25  well, would you prefer to send me another status report

AECOM Energy v. USA                                    4/18/2024

1    after working out dates beyond that or do you want me to

2    just issue an order with the additional 145 days beyond

3    that and the rest of the schedule just extended by the

4    same amount?;

5              MR. SPETH:  That would be our request -- our

6    preference.

7              MR. OH:  I think we'd be agreeable to that,

8    just tacking it on the end.

9              THE COURT:  Okay.  So we'll do that.  So, yeah,

10   so I can just issue an order with new dates and add --

11   yeah, whatever number of days.  It may vary a little bit

12   based on like weekends and things like that.  But if

13   that's okay with the parties, I'll just issue a

14   (inaudible) order today or --

15             THE CLERK:  (Inaudible).

16             THE COURT:  Yeah, today.  With those new

17   deadlines.

18             Anything else that we should talk about while

19   we're here?

20             MR. SPETH:  I guess my only question is how

21   we should -- would it be helpful to the Court to

22   have status reports between now and the 28th with just

23   the normal -- we're doing a monthly, but should we do

24   it more frequently, should we -- I think that they

25   usually are sort of middle of the month.  So I guess

AECOM Energy v. USA                                    4/18/2024

```
 1   we just did --
 2              THE COURT:  Mm-hmm.
 3              MR. OH:  They're in April, May, June.
 4              MR. SPETH:  So I guess we could --
 5              THE COURT:  Would it be helpful to have more?
 6   We can say every two weeks until the end of June if
 7   that's useful.
 8              MR. OH:  I am personally okay with once a
 9   month, but --
10              THE COURT:  I mean, you're welcome to -- you're
11   welcome to submit one early if there's an issue that
12   comes up.
13              MR. OH:  Yeah, I think Mr. Speth and I have had
14   frequent communication.  So it's not like, you know, if
15   there's any -- I think the big thing is we're trying to
16   avoid any surprises.  So there have been a lot of updates
17   interpersonally between us.  So I think that makes sense.
18   If something does arise that changes the trajectory, we
19   can sort of voluntarily file something.
20              Judge Silfen, if it's not too much of a point,
21   I know this -- you've already said June 28th, but even
22   like a modicum of extra time would be super-helpful.  As
23   things currently stand, the fact discovery cutoff was
24   July 3rd.  Could we just possibly get that extra five
25   days for this, you know, substantial whatever -- you
```

AECOM Energy v. USA                                      4/18/2024

 1    know, this new production -- privilege or new production

 2    deadline, just right before the July 4th holiday?  It's a

 3    little bit extra time, but I promise you it would be

 4    tremendously helpful on our end.

 5            THE COURT:  That's fine.  Okay, yes, that's

 6    fine, July 3rd.

 7            Okay.  (Inaudible) calculate the dates

 8    (inaudible).

 9            MR. SPETH:  I don't know whether it's implicit

10    or not, but, I mean, I would hope -- and we can talk

11    about this in our status reports -- but that the

12    Government would produce, you know, on a rolling basis,

13    that it's not going to be a massive production on July

14    3rd, but as documents -- if and when documents are

15    identified as nonprivileged, they're produced at some

16    regular interval.

17            THE COURT:  I think -- yeah, I think that makes

18    sense.  I mean, I'm happy to put that in the order.

19            MR. OH:  Yeah, we'll continue on the

20    trajectory.  We've been trying to do it between every one

21    to two weeks.

22            THE COURT:  Yeah, great.  Okay.  That works.

23            Anything else on anybody's end?

24            MR. SPETH:  No, thank you.

25            THE COURT:  Okay, all right.  Well, thanks for

31

AECOM Energy v. USA                                    4/18/2024

    1    working collaboratively on the case and I'll hope for a

    2    status...

    3              (Whereupon, the hearing was adjourned.)

    4

    5

    6

    7

    8

    9

   10

   11

   12

   13

   14

   15

   16

   17

   18

   19

   20

   21

   22

   23

   24

   25

AECOM Energy v. USA                                      4/18/2024

1                    CERTIFICATE OF TRANSCRIBER

2

3            I, Elizabeth M. Farrell, court-approved

4    transcriber, certify that the foregoing is a correct

5    transcript from the official electronic sound recording

6    of the proceedings in the above-titled matter.

7

8

9    DATE:  5/10/2024          s/Elizabeth M. Farrell

10                             ELIZABETH M. FARRELL, CERT

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

For The Record, Inc.

(301) 870-8025 - www.ftrinc.net - (800) 921-5555