IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | |
|---|---|
| AMENTUM ENVIRONMENT & ENERGY, INC., <br><br> Plaintiff, <br><br> v. <br><br> THE UNITED STATES OF AMERICA, <br><br> Defendant. | Case No. 20-2016 C <br> Judge Silfen |

**PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION
TO MODIFY THE SCHEDULING ORDER**

The Court should reject the government's motion to modify the scheduling order in the manner requested. Seeking to extend the schedule in this case for the seventh time, the government refuses to acknowledge its responsibility for the delays that have led it to request this extension. Moreover, it refuses to commit to meeting the very deadlines it now asks the Court to impose. Given the government's record of delay and the prejudice to plaintiff caused by allowing that delay to continue, the Court should not grant the relief the government now seeks. Instead, the Court should implement the limitations suggested below by plaintiff Amentum Environment & Energy, Inc., formerly known as URS Energy & Construction, Inc. ("URS"), which are necessary to ensure the completion of fact discovery.

**FACTUAL BACKGROUND**

The government's motion—seeking this Court's permission to again extend discovery in this case—is riddled with half-truths and convenient omissions about its own dilatory conduct.

1

**A. Delay by the Government in Document Discovery**

The government's single mention of its "own previous delays in collecting and producing documents," Gov't Mot. at 2,[1] attempts to gloss over the significant impact to the case schedule caused by its failure to produce documents in a timely manner. URS filed its Complaint in December 2020, seeking over $300 million of unpaid costs it incurred in cleaning up the Separations Process Research Unit ("SPRU") site at the Knolls Atomic Power Laboratory ("KAPL") in Niskayuna, New York from 2011 to 2019. ECF. No. 1.

Fact discovery began in July 2021, and document production commenced in May 2022. ECF No. 35. The scheduling order in effect at that time required substantial completion of document production on or before September 30, 2022. ECF No. 23. URS met this deadline. ECF No. 24. The government did not. *Id.* Although it represented at that time that it would substantially complete production by the end of October 2022, *id.*, the government subsequently acknowledged both substantive and technological deficiencies in its prior productions, ECF Nos. 25, 26. The government continued to struggle to timely collect and produce documents for much of the next year. *See* ECF No. 32. At a status conference on October 17, 2023, the government represented it would be able to complete its production by January 10, 2024, and "[b]oth parties acknowledged that these dates would not be extended absent extraordinary circumstances and a showing of good cause." ECF No. 35. Based on those representations, the Court set January 10, 2024, as the deadline for the completion of document production by the government. *Id.*

The government, again, failed to live up to its commitments. In the parties' November 2023 status report, the government began moving the goalposts, representing to the Court (and

---

[1] Citations to "Gov't Mot." are to Defendant's Motion to Modify the Scheduling Order (ECF No. 64). Citations to exhibits identified with letters A through E are to the exhibits filed therewith (ECF Nos. 64-1 to 64-5). Citations to exhibits identified by letters F though H are to the exhibits filed with this opposition.

URS) that it would complete production by the Court-ordered deadline "minus documents withheld on the basis of potential privilege." ECF No. 39. This carve out was not discussed prior to the entry of the Court's order,[2] and the government did not inform the Court (or URS) that the volume of "initially screened privilege withholdings w[as] considerable, totaling around two million documents." ECF No. 44 at 1. The government did not complete, or substantially complete, its document productions by the Court's January 10, 2024, deadline. ECF No. 41. Rather, in the period following that deadline—between January 16 and April 15, 2024—the government produced "approximately 1.3 million documents (or approximately 9.5 million pages)." ECF No. 44 at 2.

After the court extended the deadline for the completion of the government's production two more times, ECF Nos. 45, 50, the government finally completed document production on July 26, 2024—nearly *two years* after the initial deadline set by this Court. ECF No. 52. Moreover, the government produced over 8.4 million documents, the vast majority of which it did not review before production, which had the effect of shifting the burden for identifying relevant documents in the government's productions onto URS. *See* ECF No. 44 at 5-6.

## B. Delay by the Government in Deposition Scheduling

The government's account of the history of deposition scheduling in this case is misleading or worse. The three examples on which the government relies do not support the schedule extension the government seeks; rather, the government's conduct demonstrates that it

---

[2] ECF No. 44 at p. 5 ("[A]lthough it is correct that *after* the Discovery Scheduling Order had been entered by the Court on October 18, 2023, the Government informed URS that it would not complete production of all responsive Government documents that it had initially withheld for potential privilege by the January 10, 2024 deadline (and the parties informed the Court of this in the November and December joint status reports), this was not communicated to URS or the Court prior to the entry of the Discovery Scheduling Order.").

had no intention of complying with the deadline set by this Court for the completion of fact discovery.

*First*, the government says in its motion: "Although defendant noticed the URS 30(b)(6) deposition on September 20, 2024, the first time plaintiff proposed a date was on January 30, 2025—over four months after the initial notice." Gov't Mot. at 4.  While it is true that URS did not propose a date earlier, URS informed the government on September 6, 2024 that one of URS's 30(b)(6) designees would be on medical leave from late October 2024 through mid-February 2025.[3]  It should not, therefore, have come as a surprise to the government that URS proposed to hold this deposition the week of March 10, with approximately six weeks of advance notice.  In response, the government did not propose another time within the operative fact discovery window, offering instead, on February 11, to take the deposition during the week of March 24.  Ex. E at 12.  At no point did the government provide an explanation for its unavailability during the *final week* of fact discovery in this case, and—even more puzzling considering the government's prior representations of unavailability—on February 21, the government served a subpoena on a previously undisclosed non-party witness for a deposition to occur on March 13 (*i.e.*, the same week that URS had offered for the URS 30(b)(6) deposition), *see* Ex. E at 8.

*Second*, the government complains that it has not received proposed dates for certain other URS witnesses, using Mr. Gavin as an example.  Gov't Mot. at 4, 5.  Mr. Gavin's case shows just the opposite.  On January 30, URS proposed holding Mr. Gavin's deposition on February 19 or 20.  Ex. E at 15.  In response, on February 3, the government stated that it could

---

[3]   To avoid disclosing personal medical information, URS has not attached this email as an exhibit to this opposition but can provide that email under seal if it would be helpful to the Court in ruling on this motion.

4

not conduct the deposition on a date that overlapped with another witness—even though four DOJ lawyers have taken or defended depositions in this case—and requested dates "later in March"—*i.e.*, after the close of fact discovery. *Id.* at 14. The government's complaint that "20-days' notice would not be sufficient time to prepare" for a single fact witness deposition, Gov't Mot. at 5, is simply unreasonable, and, in any event, there is no reason that the government could not have begun preparing for Mr. Gavin's deposition before its date was confirmed. On February 5, and in the weeks that followed, URS repeatedly sought alternative dates, asking whether the government had availability during the week of March 10 to take Mr. Gavin's deposition. Ex. E at 13, 10-11, 8, 6. After nearly a month of non-answers, the government responded on March 3 by proposing March 25 for Mr. Gavin's deposition—again, after the close of fact discovery. *Id.* at 5. It would, therefore, have been futile for URS to seek to confirm dates for the depositions of other witnesses during the operative fact discovery window when the government had told URS, and showed through its conduct, that it was unavailable.

*Third*, the government suggests that it has "proposed deposition dates for all three … outstanding depositions" of its own witnesses, purporting to identify proposals it has made for dates for the Naval Reactors 30(b)(6) ("NR 30(b)(6)"), Ms. Tate, and Mr. Cochran. Gov't Mot. at 5. That is not the case. As to the NR 30(b)(6), on January 30, URS proposed holding the deposition during the week of March 3. The government replied on February 3—without explanation—that NR was not available until the week of March 17 (again, *after* the close of fact discovery). Ex. E at 14. Nonetheless, URS followed up to request availability that week and agreed to take the deposition on any date that worked for the government. *Id.* at 11. On February 12, however, the government clawed back a significant document relevant to Naval Reactors. *Id.* at 8. URS thereafter requested timely resolution of the clawback issue to avoid

5

needing to take the NR 30(b)(6) twice. *Id.* URS followed up repeatedly seeking the basis for this clawback so that it could present the issue to this Court, *id.* at 8, 5-6, 4, but the government did not provide a basis for the clawback until March 10. *Id.* at 2.[4] In the meantime, the government unilaterally and without explanation attempted to further delay the Naval Reactors 30(b)(6). *Compare id.* at 6 *with id.* at 5.

As to both Ms. Tate and Mr. Cochran, the government says it "proposed a number of dates in March." Gov't Mot. at 5. In fact, the government has never provided a proposed date for either witness. For Ms. Tate, on February 25 the government provided a list of dates when Ms. Tate was unavailable, without confirming her availability on any other date. Ex. E at 7. Shortly thereafter, on February 27, URS proposed a date not among those listed as unavailable. *Id.* at 6. The government has not, in the weeks since that request, confirmed that date, or proposed an alternative. *Id.* at 5, 4; Ex. F at 3, 2, 1. Similarly, for Mr. Cochran, the government—on March 3—provided dates of Mr. Cochran's unavailability over the next two weeks, along with a unilateral assertion that the deposition would be virtual. Ex. E at 5. When URS asked the government to confirm Mr. Cochran's location in order to determine whether it would consent to proceeding virtually, *id.* at 4, the government ignored the inquiry and did not provide further information regarding Mr. Cochran's availability, *id.* at 1-3; Ex. F at 1.

### C. The Government's Request for a Schedule Extension

The government next omits key information regarding the relief it seeks and URS's position on this motion. The government writes, "Plaintiff … opposes this request, unless we

---

[4] The government's explanations for the clawbacks, *id.* at 2, did not engage with the points made by URS weeks earlier, *id.* at 5-6. In an effort to avoid burdening the Court with unnecessary motions, URS followed up with the government, Ex. F at 2, and—in light of the government's refusal to engage, *id.* at 1—will promptly move this court for an order compelling disclosure of these non-privileged documents.

agree not to seek any further extension for any reason, except on the basis of unforeseen, extraordinary circumstances." Gov't Mot. at 1.  In fact, the parties discussed the government's request for an extension at length over the course of six weeks and reached an agreement on the terms for a joint request, only for the government to renege on that agreement.  *See* Ex. G.

URS has been reasonable in its efforts to accommodate the government's ever-changing requests and justifications.  After the government requested an extension *sub silentio* in an email to URS on February 3, Ex. E at 14, URS followed up seeking clarity regarding that request and confirmed that it would be amenable to a relatively short extension, *id.* at 13.  In response, on February 11, the government requested an 8-week extension to take 6 depositions.  *Id* at 12.  As recounted above—despite URS's best efforts to seek government availability during the operative fact discovery period—the government thereafter refused to provide any availability for its witnesses or its attorneys for weeks on end, resulting in no further depositions being scheduled.  *See supra*, p. 3-6.  Then, for the first time on March 10, the government requested a 12-week extension of fact discovery—four weeks more than it had previously requested.  *See* Ex. G at 11-12.

On March 10 and 11, URS made multiple offers seeking to address the government's concerns without unduly prolonging fact discovery in this case.  URS proposed extensions of three weeks or six weeks (or more) to the deadline for the close of fact discovery while seeking to maintain the same date for the close of expert discovery.  Ex. G at 12, 11.  The government refused, insisting that it could not complete fact discovery in fewer than 10 weeks and that all subsequent dates should be adjusted accordingly.  *Id.* at 10.  Trying to achieve compromise via a different avenue, URS proposed that it would agree to the 10-week extension to all deadlines requested by the government on the condition that the following language be included in the

7

parties' Joint Motion (without the bracketed language) along with a request that the Court also include it in the revised scheduling order (with the bracketed language): "Neither party will seek[, and this Court will not grant,] any further extensions to the below schedule for any reason, except on the basis of unforeseen, extraordinary circumstances, and in such circumstances the extension will be no greater than strictly necessary to allow for those circumstances to be addressed." *Id.* at 9-10. The government agreed, adding additional language regarding proposed deposition dates, *id.* at 9, which URS accepted, *id.* at 8-9.

On the morning of March 12, URS sent the government a draft Joint Motion memorializing the agreement the parties had reached on March 11. *Id.* at 7-8. The government did not respond for over a day, and then responded with "edits" that entirely undermined the agreement between the parties to seek no further extensions absent unforeseen, extraordinary circumstances. *Id.* at 5; Ex. H at 1. URS rejected the government's watered-down language, *see* Ex. G at 5, 4, but the government refused to honor the terms of the agreement that it had confirmed in writing only two days prior. *Id.* at 2 ("When I sent the draft motion to my reviewer, my reviewer said we absolutely cannot agree to that particular language. I cannot file anything without my reviewer agreeing."). Thereafter, the government filed the instant motion.

## APPROPRIATE RELIEF

Because of the repeated discovery delays caused by the government, certain depositions remain outstanding. Each week that fact discovery is delayed, however, causes further prejudice to URS, which is seeking payment for work it already completed and of which the government has already received the benefit. URS therefore suggests that the Court order that the close of fact discovery be extended six weeks and adopt the language previously agreed to by the parties, ordering that "Neither party will seek, and this Court will not grant, any further extensions to the below schedule for any reason, except on the basis of unforeseen, extraordinary circumstances,

and in such circumstances the extension will be no greater than strictly necessary to allow for those circumstances to be addressed." That would result in the following schedule:

| Event | Deadline |
|---|---|
| Close of fact discovery | April 25, 2025 |
| Joint status report due that updates the court on a first settlement discussion | May 9, 2025 |
| Exchange of expert reports | June 20, 2025 |
| Exchange of rebuttal expert reports | August 15, 2025 |
| Close of expert discovery | October 10, 2025 |
| Joint status report due that (1) updates the court on a second settlement discussion, and (2) proposes a schedule for further proceedings. The dispositive-motion briefing schedule shall include four deadlines: (1) URS's affirmative motion; (2) the government's cross-motion and response; (3) URS's response and reply; and (4) the government's reply. | October 24, 2025 |

The parties would continue to jointly submit a status report on the every-30-day schedule through the close of expert discovery, the last one due on November 21, 2025.

<table>
<tr><td>Respectfully submitted,</td><td></td></tr>
</table>

                                                               *s/ Charles C. Speth*
                                                               CHARLES C. SPETH, *Counsel of Record*
                                                               WILMER CUTLER PICKERING
                                                                    HALE AND DORR LLP
                                                               2100 Pennsylvania Avenue N.W.
                                                               Washington, D.C. 20037
                                                               Telephone: (202) 663-6000
                                                               Facsimile: (202) 663-6363
                                                               Email: charles.speth@wilmerhale.com

                                                               ANDREW E. SHIPLEY, *Of Counsel*
                                                               WILMER CUTLER PICKERING
                                                                    HALE AND DORR LLP
                                                               2100 Pennsylvania Avenue N.W.
                                                               Washington, D.C. 20037
                                                               Telephone: (202) 663-6000
                                                               Facsimile: (202) 663-6363
                                                               Email: andrew.shipley@wilmerhale.com

                                                               *Attorneys for Plaintiff Amentum Environment & Energy, Inc.*

Dated: March 19, 2025