IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | |
|---|---|
| AMENTUM ENVIRONMENT & ENERGY, INC.,<br><br>Plaintiff,<br><br>v.<br><br>THE UNITED STATES OF AMERICA,<br><br>Defendant. | Case No. 20-2016 C<br>Judge Silfen |

**PLAINTIFF'S MEMORANDUM OF LAW IN SUPPORT OF MOTION TO COMPEL**

**TABLE OF CONTENTS**

INTRODUCTION ...................................................................................................................1

FACTUAL BACKGROUND ..................................................................................................2

    A.    The Government's Lengthy Privilege Review .........................................2

    B.    The Government's Delayed and Insufficient Justification for Its Clawbacks ...........................................................................................3

ARGUMENT .............................................................................................................................4

    A.    Standard of Review ...................................................................................4

    B.    DEFPROD23274001 and Related Documents ........................................4

        1.    Privilege ...........................................................................................5

        2.    Waiver ..............................................................................................8

    C.    DEFPROD16478482 and Related Documents ........................................9

    D.    DEFPROD1132069 and Related Documents ........................................12

        1.    Privilege .........................................................................................12

        2.    Waiver ............................................................................................14

CONCLUSION .......................................................................................................................15

## TABLE OF AUTHORITIES

Page(s)

**CASES**

*AAB Joint Venture v. United States*, 75 Fed. Cl. 448 (2007) ..................................................... 4, 14

*Banks v. Office of Senate Sergeant-at-Arms*, 233 F.R.D. 1 (D.D.C. 2005) ..................................... 9

*CAN Softtech, Inc. v. United States*, 2025 WL 517963 (Fed. Cl. Jan. 31, 2025) ............................ 4

*Chevron U.S.A., Inc. v. United States*, 83 Fed. Cl. 195 (2008) ..................................................... 13

*Comptel v. FCC*, 910 F. Supp. 2d 100 (D.D.C. 2012) ..................................................................... 7

*E.B. v. N.Y.C. Bd. of Educ.*, 2007 WL 2874862 (E.D.N.Y. Sept. 27, 2007) .................................... 7

*Eden Island Marina, Inc. v. United States*, 89 Fed. Cl. 480 (2009) ...................................... passim

*Energy Capital Corp. v. United States*, 45 Fed. Cl. 481 (2000) ..................................................... 4

*Fru-Con Const. Corp. v. Sacramento Mun. Util. Dist.*, 2006 WL 2255538 (E.D. Cal. Aug. 7, 2006) ................................................................................................................. 6

*Hum. Rts. Def. Ctr. v. U.S. Park Police*, 126 F.4th 708 (D.C. Cir. 2025) ..................................... 10

*In re Google Inc.*, 462 F. App'x 975 (Fed. Cir. 2012) .................................................................... 13

*In re Samsung Customer Data Sec. Breach Litig.*, 2024 WL 3861330 (D.N.J. Aug. 19, 2024) ........................................................................................................................ 7

*Northrup Grumman Corp. v. United States*, 80 Fed. Cl. 651 (2008) ........................................ 6, 13

*Oasis Int'l Waters, Inc. v. United States*, 110 Fed. Cl. 87 (2013) ............................................. 8, 12

*Quintel Tech. Ltd. v. Huawei Techs., Inc.*, 2017 WL 11631811 (E.D. Tex. Nov. 2, 2017) ............................................................................................................................................ 9

*Telephonics Corp. v. United States*, 32 Fed.Cl. 360 (1994) ............................................................ 8

*U.S. ex rel. Barko v. Halliburton Co.*, 7 F. Supp. 3d 183 (D.D.C. 2014) ........................................ 9

*U.S. ex rel Omni Healthcare, Inc. v. MD Spine Solutions LLC*, 736 F. Supp. 3d 75 (D. Mass 2024) ................................................................................................................... 9

*Upjohn Co. v. United States*, 449 U.S. 383 (1981) ......................................................................... 4

*Weston/Bean Joint Ventures v. United States*, 128 Fed. Cl. 1 (2014) ................................. 6, 13, 14

## INTRODUCTION

Defendant, the United States of America, has an extensive record of delay, shifting explanations, and repeated excuses over the years that this litigation has been pending before this Court. *See* ECF No. 65 at 1-8. Yet again, Plaintiff Amentum Environment & Energy, Inc., formerly known as URS Energy & Construction, Inc. ("URS"), must come to this Court seeking relief in response to inconsistent, ambiguous, and erroneous positions taken by the government.

Late in fact discovery, the government attempted to claw back three documents it had produced as they were marked as exhibits at depositions, asserting attorney-client privilege. Ex. A; Ex. B; Ex. C; Ex. D;[1] *see also* ECF No. 64-5 at 2.[2] URS sought further information regarding the basis for those clawbacks, and URS provided its own preliminary view on why these and other similar documents were not privileged, and any privilege that had existed had been waived. ECF No. 64-5 at 5-6. The government's response—provided only after repeated prodding from URS—continued to claim privilege but refused to engage with URS's explanation for why these documents are not privileged and did not accept counsel's invitation to meet and confer. ECF No. 65-1 at 4, 3, 2. Thus, the government has failed to make clear whether it is asserting privilege over other identical and/or similar documents, including those that URS identified to the government by email on February 27, 2025. *Compare* ECF No. 64-5 at 5-6 (URS identifying other documents) *with* Ex. A (listing only these three documents). Accordingly, URS will

---

[1] All citations to exhibits are to those exhibits filed under seal, in compliance with Court of Federal Claims Rule 26(b)(5)(B), as attachments to the Declaration of Charles Speth filed herewith.

[2] As the government filed the substance of this email chain between counsel on the Court's public docket, URS will proceed under the assumption that nothing reflected in the emails in that chain is viewed by the government as privileged.

1

address in this motion all documents identified in URS's February 27, 2025, email.[3] ECF No. 64-5 at 5-6.

For the below reasons, this Court should compel the government to withdraw its improper claim of attorney-client privilege over previously produced documents or compel the production of such documents.

## FACTUAL BACKGROUND

### A.     The Government's Lengthy Privilege Review

One of the government's main rationales for its yearslong delay in completing document production was its need to review huge quantities of documents that it had withheld as potentially privileged. *See* ECF No. 44. Even after this Court ordered the government to complete document production no later than January 10, 2024—a deadline that was not to be extended "absent extraordinary circumstances and a showing of good cause"—the government took the bewildering position that it did not have to conclude its review and production of the approximately two million documents it was withholding as *potentially privileged* by this deadline. *See id.* at 1, 5.

In the six months after January 10, 2024, the government produced almost a million and a half additional documents. As it reported at the time, the government's ongoing review of documents for privilege was the reason that it was unable to complete document production until the end of July 2024. *Id.*; ECF No. 49. In spite of the delay and repeated assertions of burden, the government's privilege log contains fewer than 12,000 entries (including documents that were produced with privilege redactions). In contrast, URS reviewed over 200,000 documents in

---

[3]    As discussed *infra* at 9, the government's failure to claw back those documents after they were identified by URS, *see* ECF No. 64-5 at 5-6, 2, constitutes a further basis for this court to find waiver.

2

its own privilege review, ECF No. 44 at 3-4, and—on September 9, 2024, the date upon which the government finally agreed to exchange privilege logs—produced a privilege log detailing document-by-document privilege determinations for over 50,000 documents.

### B.     The Government's Delayed and Insufficient Justification for Its Clawbacks

On January 16, 2025, during the deposition of a government witness, the government clawed back a document with the Bates number DEFPROD1132069.  Ex D.  The rationale provided by the government at the time was that the document is sent to an attorney "along with other people -- asking for review and comment" and the subject line says "Attorney-client Privilege."  Ex. E, 160:11-161:7.  No further justification was provided.

On February 12, 2025, during the deposition of a Rule 30(b)(6) designee for the government, the government clawed back two documents with the Bates numbers DEFPROD23274001 and DEFPROD16478482.  *See* Ex. B; Ex. C.  As to the former, the government explained that it was clawing back the document because "it has the words attorney-client privilege" and "the person on the to line is an attorney."  Ex. F, 119:2-17.  The government further stated that it would follow up after taking time to "double-check."  *Id.*, 121:11-122:6.  As to the second document, the government explained that it was clawing the document back because it reflected an attorney providing legal advice, but that it might "potentially produc[e] a redacted version."  *Id.*, 208:1-19.

On February 24, 2025, URS followed up to ask when it could expect to receive an update on the government's position with respect to these clawbacks.  ECF No. 64-5 at 8.  On February 25, the government said it would provide an answer that week.  *Id.* at 7.  In an effort to avoid unnecessary delay, on February 27, URS provided additional information explaining why these documents were not privileged and any privilege that might have been asserted had been waived.  *Id.* at 5-6.  URS followed up on March 4, *id.* at 4, and March 10, *id.* at 3.  On March 10, URS

3

finally received a response stating the government's rationale for its assertions of privilege. *Id.* at 2. But that email did little more than restate the government's prior positions, and did not engage at all with the information that URS provided on February 27. URS attempted to seek further explanation on March 12 and again on March 17, offering to meet and confer, ECF No. 65-1 at 2, but the government refused, *id.* at 1-2.

## ARGUMENT

The government's justifications for these clawbacks fail to establish that the documents are protected by attorney-client privilege, nor do they address the fact that any privilege that may have existed over these documents has been waived.

### A. Standard of Review

It is black letter law that "[t]he burden of establishing the attorney-client privilege rests upon the party claiming privilege." *AAB Joint Venture v. United States*, 75 Fed. Cl. 448, 456 (2007) (quoting *Energy Capital Corp. v. United States*, 45 Fed. Cl. 481, 484 (2000)). To satisfy this burden, the party claiming privilege must show "the communication was made" to "a member of the bar of a court … for the purpose of securing" legal advice or assistance, and the privilege has not been waived. *Energy Cap. Corp.*, 45 Fed. Cl. at 484–85. The privilege, however, "does not protect disclosure of the underlying facts by those who communicated with the attorney." *CAN Softtech, Inc. v. United States*, 2025 WL 517963 (Fed. Cl. Jan. 31, 2025) (quoting *Upjohn Co. v. United States*, 449 U.S. 383, 395 (1981)).

### B. DEFPROD23274001 and Related Documents

The documents containing this email chain, *see* Ex. B, are not privileged and any privilege that may have existed over them has been waived.

This document the government has clawed back is a December 10, 2010, email with the subject line "RE: EPA Meeting" sent by Jeffery Steele, an employee of Naval Reactors, to Frank

4

Putzu, an attorney at Naval Reactors, with a CC to Troy Mueller, Timothy Ketcham, and Thomas Weishar, all non-lawyer employees of Naval Reactors. The government has asserted that this document is protected by attorney-client privilege because it reflects a "Confidential communication requesting information for purposes of discussion regarding legal strategy for case." Ex. A; *see also* ECF No. 64-5 at 2.

The document suggests no such purpose. It reflects ███████████████ ████████████████████████████████████████████████████ ██████████████████████████████████████████ █████████████████████████████████████████████ ████████████████████████████████████████████ ███████████████████████████████████████████ █████████████████████████████████████████████ ████████████████████████████████████████████ ██████████████████████████████████████████ █████████████████████████████████████████████ ██████████████.

   1.   *Privilege*

These documents are not privileged. ████████████████████████████ ████████████████████████████████████████████████████ ██████████████████████████████████████████████ ██████████████████████████████████████████████ █████████████████████████████████████████████████ ████████████████████████████████.

Further, ███████████████████████████████████████████

███████████████. A document is only privileged where it was sent "for the purpose of securing primarily either (i) an opinion on law or (ii) legal services or (iii) assistance in some legal proceeding." *Energy Cap. Corp.*, 45 Fed. Cl. at 484–85; *see also Weston/Bean Joint Ventures v. United States*, 128 Fed. Cl. 1, 5-6 (2014) ("The attorney-client privilege does not shield all information that a client divulges to an attorney, or vice versa, but rather is limited to instances where legal advice is sought or rendered." (quoting *Northrup Grumman Corp. v. United States*, 80 Fed. Cl. 651, 655 (2008))). ████████████████████████

████████████████████████████████████████████████████████████████

*Eden Island Marina, Inc. v. United States*, 89 Fed. Cl. 480, 517 (2009) (explaining that, where a non-lawyer sent an email to an attorney that "merely reported the substance of a conference call, and was not seeking legal advice," that email was "not protected by the attorney-client privilege").[4] ████████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

██████████████████ The mere fact that an attorney is the recipient of an email does not convert the email into a privileged document. *See id.; see also, e.g.*, *Fru-Con Const. Corp. v. Sacramento Mun. Util. Dist.*, 2006 WL 2255538, at *2 (E.D. Cal. Aug. 7, 2006) ("[T]he

---

[4]   The Court in *Eden Island* separately concluded that the email chain was protected by work-product doctrine, *id.*, but the government has made no such claim over this email or any of the documents at issue here. *See* Ex. A.

dissemination of information to the lawyer must indicate that the lawyer is being addressed so that advice can be formulated or action taken, not simply for FYI reasons.").[5]

Likewise, the other documents in this email chain identified by URS demonstrate that there was no privileged purpose underlying this factual summary. As URS noted in its email to the government on February 27, ECF No. 64-5 at 5-6, Mr. Steele forwarded his factual summary to Jeffrey Hill and Frederick Lentz, two non-lawyers employed by Naval Reactors. Ex. G; Ex. H. The manner in which a communication is used, including its sharing or discussion between non-lawyers, may indicate that its primary purpose was not legal in nature. *See In re Samsung Customer Data Sec. Breach Litig.*, 2024 WL 3861330, at *14 (D.N.J. Aug. 19, 2024) (sharing information with non-attorneys suggestive of non-privilege purpose); *E.B. v. N.Y.C. Bd. of Educ.*, 2007 WL 2874862, at *4-5 (E.D.N.Y. Sept. 27, 2007) (dissemination of "purely factual" information to non-lawyers was not privileged). Here, the fact that Mr. Steele provided the same factual summary to Mr. Hill and Mr. Lentz suggests that the purpose of his factual summary email to Mr. Putzu was ███████████████████████████████ ███████.

Even if the communication between Mr. Steele and Mr. Putzu were privileged (which it is not), Mr. Steele's email to Mr. Hill and Mr. Lentz would still lack any privilege protection. Emails between non-lawyers that do not reflect legal advice provided by an attorney are not privileged. *See Eden Isle Marina*, 89 Fed. Cl. at 517 (explaining that an email that "was not

---

[5] It is not URS's (or this Court's) job to imagine ways in which these communications could possibly be privileged, or to credit the government's conclusory statements in support of privilege. *See, e.g.*, *Comptel v. FCC*, 910 F. Supp. 2d 100, 128 (D.D.C. 2012) ("The FCC has done nothing to show that material for which the attorney-client privilege was invoked involved confidential communications or that it related to a legal matter for which the client sought legal advice. [C]onclusory assertions of privilege will not suffice to carry the Government's burden of proof.").

7

authored or received by an attorney [] is therefore not protected by the attorney-client privilege."). Accordingly, this Court should order, at a minimum, that Mr. Steele's email to Mr. Hill and Mr. Lentz is not privileged.[6]

      2.    *Waiver*

Any privilege that did attach to Mr. Steele's December 10, 2010, email has been waived.

First, the government has waived any privilege through its failure to exercise even the minimum level of care necessary to maintain privilege protection. "Loss of the privilege can also result if a party produces a document without taking adequate precautions against the document's inadvertent disclosure." *Oasis Int'l Waters, Inc. v. United States*, 110 Fed. Cl. 87, 107 (2013). Under circumstances such as these, a court may conclude that a party's disclosure "was so careless that it cannot be construed as inadvertent." *Eden Isle Marina*, 89 Fed. Cl. at 517. Under a similar analysis, even if the disclosure was inadvertent, the party must show that it "took reasonable steps to prevent disclosure." *Id.* (quoting Fed. R. Evid. 502(b)). Here, the government produced *five versions* of the email in question. Ex. B;[7] Ex. G; Ex. H. It did not redact *any versions* of the email or otherwise demonstrate a reasonable level of diligence in seeking to avoid the disclosure of this email. *Cf. Oasis Int'l Waters*, 110 Fed. Cl. at 107 (summarizing the reasonable diligence in *Telephonics Corp. v. United States*, 32 Fed.Cl. 360

---

[6]     Even if the Court determines that the communication to Mr. Putzu of this factual information was privileged—in spite of there being no indicia to suggest it was—the facts that are communicated do not themselves become privileged. Therefore, when Mr. Steele forwarded that email containing non-privileged factual information to Mr. Hill and Mr. Lentz—the only thing that could even plausibly need to be redacted would be the email header containing the To/From/CC fields reflecting that the same information had previously been sent to Mr. Putzu.

[7]     To avoid unnecessarily burdening the Court with sealed exhibits, URS is not attaching the two additional, identical copies of the email to Mr. Putzu as exhibits, but for the government's reference, they appear in the government's production with Bates numbers DEFPROD23269287 and DEFPROD23261990.

(1994), where a party withheld two copies of an email but failed to identify and withhold a third copy).

Second, the government's failure to claim privilege over the versions identified by URS on February 27, 2025, ECF No. 64-5 at 5-6, 2, further effectuated a waiver of any privilege. *See Eden Isle Marina*, 89 Fed. Cl. at 519 ("failure to object" when alerted to a possible disclosure constitutes waiver); *see also Banks v. Office of Senate Sergeant-at-Arms*, 233 F.R.D. 1, 9 (D.D.C. 2005) ("Failure to assert privilege within a reasonable time, without a showing of good cause, constitutes a waiver of privilege."); *U.S. ex rel Omni Healthcare, Inc. v. MD Spine Solutions LLC*, 736 F. Supp. 3d 75, 83-84 (D. Mass 2024) (failure to search for and claw back related documents after documents were identified by opposing party constituted waiver).

Finally, any privilege that initially attached to Mr. Steele's email to Mr. Putzu was waived by Mr. Steele's forward to Mr. Hill and Mr. Lentz, as discussed *supra* pp. 7-8. *See, e.g.*, *U.S. ex rel. Barko v. Halliburton Co.*, 7 F. Supp. 3d 183, 190-91 (D.D.C. 2014) (holding that an otherwise-privileged communication that is shared with non-attorney employees who do not "need to know" the information waives the privilege); *Quintel Tech. Ltd. v. Huawei Techs., Inc.*, 2017 WL 11631811, at *5-*6 (E.D. Tex. Nov. 2, 2017) ("[D]isclosure to individuals without responsibility for the subject matter underlying the privileged communications waives the privilege."). As above, *see supra* p. 7, n.5, conclusory assertions dp not suffice.

Because these documents are not protected by the attorney-client privilege and, in any event, any such privilege has been waived, the government should be compelled to withdraw its clawback.

C. **DEFPROD16478482 and Related Documents**

Whatever privilege might have attached to these documents has been conclusively waived by the government. The email chain at issue here is a January 11, 2011, exchange

9

between Mr. Giardina, Jeanette Eng, a Health Physicist in the EPA Region 2 office, and Evans Stamataky, an EPA attorney.  Ex. A; Ex. C.  The substance of the email reflects ████████████████████████████████████████████████████████████████ ██████.  Ex. C.  The government asserts that this document is protected by attorney-client privilege because Mr. Stamataky was communicating with "agency clients regarding potential violations of regulations as related to draft consent order."  Ex. A; *see also* ECF No. 64-5 at 2.

The government has waived any privilege multiple times over.  The first such waiver occurred before this litigation was initiated, when the EPA produced this document to URS in 2014 in response to Freedom of Information Act ("FOIA") requests made by URS.  "FOIA does not provide for the compelled return or destruction of inadvertently produced information." *Hum. Rts. Def. Ctr. v. U.S. Park Police*, 126 F.4th 708, 717 (D.C. Cir. 2025) (citing 5 U.S.C. § 552).  As the D.C. Circuit recently held in a FOIA litigation, courts are without power to force the return of documents once they are disclosed through FOIA.  *Id.* at 719 ("Congress designed FOIA to function largely without court compulsion.… if the agency … fails to make intended redactions, neither FOIA nor any inherent judicial authority enables it to seek a court order to limit the effects of its error.").  As such, any privilege over this document was waived long ago.

The government again waived any privilege when the documents were produced back to the government by URS in discovery.  URS produced two copies of this document to the government in September 2022.  Ex. I; Ex. J.  The government, thereater, sat on these documents—as received from URS in response to the government's document requests—for well over two years before it initiated any clawback.  *Cf. Eden Isle Marina*, 89 Fed. Cl. at 508 (finding waiver where a party "fail[ed] to take prompt, affirmative, curative action").  This was a second waiver.

10

And the government waived privilege over this communication a third time through its repeated production in this case. In *Eden Isle Marina*, the Court addressed clawback claims made with respect to documents that had been produced via FOIA request and through other means. The Court there explained, "[b]ecause defendant disclosed the pages to plaintiff more than once, and via more than one mechanism, the court concludes that defendant's disclosure was so careless that it cannot be construed as inadvertent." *Eden Isle Marina*, 89 Fed. Cl. at 510, 512, 515. So too here, where the government has disclosed this document "more than once, and via more than one mechanism."

The Court in *Eden Isle Marina*, in the alternative, addressed the standard for inadvertent disclosure, noting that, in order to claw a document back, a party must show that it "took reasonable steps to prevent disclosure." *Id.* at 512 (quoting Fed. R. Evid. 502(b)). Here, the government did not take reasonable steps. The government produced a significant volume of documents it collected from the EPA during discovery in this matter. *See, e.g.*, ECF 35. Yet in all of its productions of EPA documents, the government *did not withhold a single document* on the basis of attorney-client privilege.[8] It is unsurprising, then, that the document that the government is seeking to claw back has been produced by the government in no fewer than ten different documents.[9] Where a party took no precautions at all to protect against the disclosure

---

[8]   Indeed, EPA email addresses appear only six times on the government's privilege log, and those six documents—with Bates numbers DEFPROD006-00223578, DEFPROD006-00146849, DEFPROD006-00146338, DEFPROD006-00182839, DEFPROD006-00232877, DEFPROD006-00210396—were all likely withheld in error because they were sent by individuals at DOE to EPA recipients (bringing them outside any attorney-client relationship).

[9]   To avoid unnecessarily burdening the Court with exhibits, URS is not attaching each of these documents as exhibits, but, for the government's reference, the Bates numbers of these documents are DEFPROD16478625, DEFPROD16512743, DEFPROD16512876, DEFPROD16513011, DEFPROD19864875, DEFPROD19864910, DEFPROD22500367, DEFPROD22496619, DEFPROD22490422, DEFPROD001-00003108.

of such information, it may not avail itself of the protections provided by Fed. R. Evid. 502(b). *See Oasis Int'l Waters, Inc.*, 110 Fed. Cl. at 107 (2013); *Eden Isle Marina*, 89 Fed. Cl. at 517.

The government has waived any privilege over DEFPROD16478482 and the other produced versions of this document.

### D.   DEFPROD1132069 and Related Documents

These documents are not privileged and, as with the documents discussed above, any privilege that may have attached them has been waived.

At issue is a March 7, 2013, email and attachment sent by John Rampe, a non-lawyer at DOE. Ex. A; Ex. D. Mr. Rampe sent the email to himself; Sky Smith, an attorney at DOE; and Wendy Bauer, the non-lawyer Contracting Officer at DOE, and included the following people on the CC line: Steven Feinberg; Alan Jines; Brady Jones; Ralph Holland; David Hess; Mell Roy; Jay Sattler; and Terry Brennan (of whom only Roy and Jones are attorneys). Ex. A; Ex. D; *see also* ECF No. 64-5 at 2. Mr. Rampe's email ███████████████████████ ███████████████████████████████████████████████████████████ ███████████████████████████████████████████████████████████ ███████████████████████████████████ ███████████████████ Ex. D. The government claims privilege asserting this document is "requesting legal advice regarding DOE position on URS claim for hillside instability." Ex. A.

#### 1.   Privilege

This email is not privileged because it does not divulge or request legal advice. ████ ███████████████████████████████████████████████████████████ ██████ Ex. D. Simply copying attorneys when ████████████████████ ████████████████████, does not convert either the communication or the attached

12

document into a request for legal advice. *See In re Google Inc.*, 462 F. App'x 975, 978 (Fed. Cir. 2012) ("It is beyond dispute that parties seeking to establish the privilege are required to sufficiently establish the communication at issue relates to professional legal services (as opposed to business considerations), regardless of whether the attorney [included on the email chain] had distinct non-legal responsibilities for the company."); *Chevron U.S.A., Inc. v. United States*, 83 Fed. Cl. 195, 200 (2008) ("Although this document may have been reviewed by a Government attorney … that fact does not transform a non-privileged document into one subject to the attorney work-product privilege, unless it contains or reflects specific content contributed by the Government attorney.").

The caselaw in this Court is clear that communications of this type are not subject to protection merely because they address the validity of administrative claims for equitable adjustment.[10] In *Northrop Grumman*, this Court addressed the question of whether attorney-client privilege protected "claim Research Papers" that were created by the government for the purpose of "aid[ing] the contracting officer to prepare a contracting officer's final decision" when "no litigation had been initiated at the time." 80 Fed. Cl. at 653. There, the Court held that neither work-product protection nor attorney-client privilege attached to these documents because the documents were not prepared in anticipation of litigation and were prepared for ordinary business purposes to assess Northrup Grumman's claim. *Id.* at 656. *See also Weston/Bean Joint Venture*, 128 Fed. Cl. at 5 ("The challenged documents addressed to the validity of the plaintiff's administrative claims would have been created whether or not the claims ultimately ended up in litigation and so were not prepared 'because of' anticipated

---

[10]   While these cases deal with both attorney-client privilege and work product doctrine, the government has not claimed work product protection over any of these documents. Ex. A

13

litigation. Indeed, the government points out that the investigation itself was required by … regulations governing the consideration of administrative claims by the contracting officer."); *AAB Joint Venture*, 75 Fed. Cl. at 455-446 ("[D]ocuments [that] were generated was to assist the contracting officer in performing his contract administration duties" not protected by work-product doctrine or attorney-client privilege). In *Weston/Bean*, in the few instances where this Court found that attorney-client privilege did apply, all parties agreed that the "email discussion" reflected the legal advice of an attorney and the privileged communication from the non-lawyer was "important" to that advice. 128 Fed. Cl. at 6. No such legal advice is reflected here.

    2.    Waiver

As with the documents discussed above, the government has waived any privilege by virtue of its productions in this case. As to the cover email—▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮—the government has produced later-in-time emails on the same thread and has not redacted Mr. Rampe's email. *See* Ex. K.[11] And, as to the document attached to Mr. Rampe's email, the government has likewise produced multiple documents that are either identical to, or contain, that document.[12] The repeated production of this information in multiple formats does not demonstrate the type of "reasonable steps to prevent disclosure" contemplated by FRE 502 and this Court's cases. *See Eden Isle Marina*, 89 Fed. Cl. at 517.

---

[11] For the government's reference, these emails also appear unredacted in the government's production at Bates number DEFPROD006-00108435, produced *after* the government's much-delayed privilege review. As above, *see supra* p. 9, where URS identified these documents, ECF No. 64-5 at 5-6, and the government did not thereafter seek to claw them back, *id.* at 2, that failure to act to protect the government's privilege constitutes an additional waiver.

[12] To avoid unnecessarily burdening the Court with exhibits, URS is not attaching each of these documents. For reference, the Bates numbers in the government's production for these documents are DEFPROD006-00220759; DEFPROD1323106; and DEFPROD006-00107096.

14

## CONCLUSION

For the reasons stated herein, URS respectfully requests that the Court grant its motion and compel the government to withdraw its claims of attorney-client privilege over the previously produced documents or compel the production of such documents.

Respectfully submitted,

                                 *s/ Charles C. Speth*
                                 CHARLES C. SPETH, *Counsel of Record*
                                 WILMER CUTLER PICKERING
                                    HALE AND DORR LLP
                                 2100 Pennsylvania Avenue N.W.
                                 Washington, D.C. 20037
                                 Telephone: (202) 663-6000
                                 Facsimile: (202) 663-6363
                                 Email: charles.speth@wilmerhale.com

                                 ANDREW E. SHIPLEY, *Of Counsel*
                                 WILMER CUTLER PICKERING
                                    HALE AND DORR LLP
                                 2100 Pennsylvania Avenue N.W.
                                 Washington, D.C. 20037
                                 Telephone: (202) 663-6000
                                 Facsimile: (202) 663-6363
                                 Email: andrew.shipley@wilmerhale.com

                                 *Attorneys for Plaintiff Amentum Environment & Energy, Inc.*

Dated: April 7, 2025