IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | |
|---|---|
| AMENTUM ENVIRONMENT & ENERGY, INC.,<br><br>        Plaintiff,<br><br>    v.<br><br>THE UNITED STATES OF AMERICA,<br><br>        Defendant. | Case No. 20-2016 C<br>Judge Silfen |

**PLAINTIFF'S REPLY MEMORANDUM OF LAW**
**IN SUPPORT OF MOTION TO COMPEL**

The government bears the burden to establish privilege over documents it seeks to shield from discovery. *Energy Capital Corp. v. United States*, 45 Fed. Cl. 481, 484 (2000). It has not met that burden.[1] The government's opposition relies on conclusory assertions that lack evidentiary support and are, in fact, contradicted by the record. It does not engage with this Court's precedents and other on-point cases cited by URS, and it entirely fails to respond to many of URS's arguments, thereby waiving any opposition. For these reasons, the Court should grant URS's motion to compel.

    A.    **DEFPROD23274001 and related documents**

This document is not privileged and any privilege that previously protected the document has been waived.

        1.    *Privilege*

The government's entire argument that this document is privileged is *ipse dixit*. Although the opposition concedes that a communication is only protected by attorney-client privilege if it was made for the purpose of providing or securing legal advice, ECF No. 71 at 5, it ignores that this factual predicate must be established through evidence rather than conclusory allegations. *See Comptel v. FCC*, 910 F. Supp. 2d 100, 119-120 (D.D.C. 2012); *see also Coastal States Gas Corp. v. DOE*, 617 F.2d 854, 863 (D.C. Cir. 1980).

The government makes the following unsupported assertions: (1)  ; (2) ; and (3) ECF No. 71

---

[1]    After filing its opposition, the Government correctly concluded that its effort to claw back the document bearing the Bates number DEFPROD16478482 was without merit and withdrew its claim. ECF No. 73. Therefore, only two documents remain at issue.

1

at 7-8. ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓

▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓

▓▓▓▓ *See* Ex. B.² ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓

▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓

Nor are these assertions supported by other evidence, such as a declaration or other extrinsic evidence, as required to sustain the claim of privilege that is not evident on the face of a document. *See, e.g.*, *Dolby Labs. Licensing Corp. v. Adobe, Inc.*, 402 Supp 855, 865 (N.D. Cal. 2019) ("A cursory review of the case law demonstrates that attorney declarations generally are necessary to support the designating party's position in a dispute about attorney-client privilege."); *Navigant Consulting Inc. v. Wilkinson*, 220 F.R.D. 467, 473 (N.D. Tex. 2004) ("The proponent [of privilege] must provide sufficient facts by way of detailed affidavits or other evidence to enable the court to determine whether the privilege exists.").

Moreover, the government ignores the on-point case law cited by URS. For example, in *Eden Island Marina*, the Court concluded that an email sent to an attorney that "merely reported the substance of a conference call, and was not seeking legal advice," was not protected by attorney-client privilege. The government makes no effort to distinguish that case, or the others cited by URS for the proposition that the communication must show that the information is being shared with an attorney for the purpose of receiving legal advice. ECF No. 68 at 6-7.

---

² All citations to exhibits are to those filed under seal as attachments to the Declaration of Charles Speth. ECF No. 69. Any suggestion it was improper for URS to sequester these documents and file of them as sealed exhibits, ECF No. 71 at 3-4, is incorrect. *See* ECF No. 18 ("The parties agree to follow RCFC 26(b)(5)(B)…"); RCFC(b)(5)(B) ("[A] party must promptly return, *sequester*, or destroy the specified information … and may promptly *present the information to the court under seal* for a determination of the claim." (emphasis added)).

2

The only evidence the government cites to support its privilege contention is ▉ ▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉. ECF No. 71 at 8-9. But it is well-settled that whether "a communication was sent to or from an attorney and/or the document was marked as confidential/privileged or attorney-client privileged" is "not dispositive as to whether or not the attorney-client privilege applies." *In re Domestic Airline Travel Antitrust Litig.*, 2020 WL 3496748, at *6 (D.D.C. Feb. 25, 2020); *see also Neuder v. Battelle Pac. Nw. Nat. Lab'y*, 194 F.R.D. 289, 295 (D.D.C. 2000) ("The recitation of the phrase 'confidential and privileged attorney-client communication' is not dispositive in determining whether a document is privileged."); *Northrop Grumman Corp v. United States*, 80 Fed. Cl. 651, 655 (2008) ("[T]he court's responsibility is to look at the essence of the document itself, and not be driven to conclusions merely by a stamp affixed to the document."). Here, ▉▉▉▉▉▉▉ ▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉ ▉▉▉▉▉▉▉.

The government also ignores entirely ▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉ ▉▉▉▉▉▉▉▉▉▉. ECF No. 68 at 7-8. As URS explained—with citation to legal authorities the government does not address—▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉ ▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉ ▉▉▉▉▉▉▉▉▉▉▉. *See id.* (explaining ▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉ ▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉ ▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉). The government ▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉ ▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉. In fact, it ▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉ ▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉. *See* ECF No. 71 at 7-9. "[F]ailure to respond in an opposition brief to an argument put forward in an opening brief constitutes waiver or abandonment in regard to the

3

uncontested issue." *Tesla Laboratories, Inc. v. United States*, 172 Fed. Cl. 505, 534 (2024) (quoting *Sarro & Assocs., Inc. v. United States*, 152 Fed. Cl. 44, 59 (2021)).

    2.  Waiver

URS made two arguments regarding the government's waiver of privilege that are completely unrelated to the government's production of documents in discovery.[3] The government has no response to either.

*First*, URS argued that the government has not claimed privilege over documents with the same content as the document that the government clawed back during the deposition. *See* ECF 68 at 9 (citing cases to which the government does not respond). The government's only response is as follows: "Because plaintiff informed us that the documents were identical, we did not believe an additional assertion of privilege would be necessary, nor would such a conclusion make logical sense." ECF No. 71 at 13.

The government's response fails for multiple reasons. First, URS did not inform the government that the documents were "identical" (and they are not). Instead, URS correctly informed the government that "the same factual summary was sent to non-lawyers Jeffrey Hill

---

[3] In its opening brief, URS argued that any privilege was waived by the government's repeated production of the same or similar documents in discovery. URS raised this argument with the government several times prior to filing its motion. *See* Ex. F, 208:20-209:10, ECF 64-5 at 5-6. In response, the government did not mention the Protective Order or Fed. R. Evid. 502(d). *See* ECF 64-5 at 3-4. Nor did the government agree to meet and confer with URS, as URS offered three times (not one time, as the government says), *compare* ECF No. 71 at 5 *with* ECF No. 65-1 at 10 (Feb. 24), 2 (March 12 & 17). *See* RCFC 7.3. Instead, for the first time in its opposition brief, the government argues that repeated production of a document in discovery cannot effect a waiver of privilege. While URS believes paragraph 15 of the Protective Order was only intended to prevent a waiver of privilege where the relevant documents were "inadvertently" or "unintentionally" produced (an assertion undermined by the repeated production of the same or similar documents), URS will withdraw any argument that the government's repeated production effects a waiver and instead focus on the core flaws in the government's clawbacks: the documents are not privileged, and, even if they had been, any privilege was waived through conduct unrelated to the government's document productions.

4

(in DEFPROD23274014) and Frederick Lentz (in DEFPROD23274025)," explaining that these were "other communications to non-lawyers that neither contain nor seek legal advice." ECF No. 64-5 at 5-6. Second, the government's position that *different* documents containing the same factual information as a clawed-back document do not need to be separately clawed back or logged for privilege is contrary to standard practice and unreasonably shifts the burden of assessing the scope of the government's clawbacks onto URS.[4] Lastly, the government response highlights its continued lack of diligence—it suggests that the government did not even look at the documents when they were identified by URS on February 27. Even with a 502(d) order guarding against waiver *by production*, the government still must take appropriate steps upon being alerted to the existence of material over which it may seek to assert privilege. *See, e.g.*, *Luna Gamin-San Diego, LLC v. Dorsey & Whitney, LLP*, 2010 WL 275083 at *6 (S.D. Cal. 2010) (holding that even where a 502(d) Order is in place, "repeated failures to object" can effect a waiver). The government's failure to take even minimal steps to guard its privilege is an independent waiver.

*Second*, URS explained that there had been a contemporaneous waiver through . ECF 68 at 9. URS's opening submission cited multiple on-point cases that stand for the proposition that . *Id.* The government does not respond to this argument at all

---

[4]  Elsewhere in its brief, the government similarly suggests that URS, not the government, bears the burden of identifying privileged documents in its production. ECF No. 71 at 4 n.2. Given the repeated production of documents of a similar character, there is no basis to suggest that URS should have known that their production was inadvertent prior to the government's effort to claw them back. *See* ECF No. 68 at 7 n.5, 11 & n.8 & n.9, 14 n.11-12.

and thus has waived any opposition and concedes this point. *See Tesla Laboratories, Inc.*, 172 Fed. Cl. at 534.

    **B.**    **DEFPROD1132069 and related documents**

The government's arguments with respect to this document are similarly unavailing.

    *1.*    *Privilege*

The primary basis for the government's assertion of privilege is that ████████ ████████████████████████████████████████ ████████ ECF No. 71 at 9-10. But, as discussed in URS's opening brief and above ████ ████████████████████████████████ *See supra* at 3; ECF No. 68 at 12-13; *see also Fru-Con Const. Corp. v. Sacramento Mun. Util. Dist.*, 2006 WL 2255538, at *2 (E.D. Cal. Aug. 7, 2006) ("[T]he dissemination of information to the lawyer must indicate that the lawyer is being addressed so that advice can be formulated or action taken, not simply for FYI reasons."). Here, ████████████████████████████████████████ ████████████████████████████████████████ ████████████████████████████████████████ ████████████████████████████████████████ ████████████████████████ has no factual basis or evidentiary support.

    The government's attempts to distinguish *Northrop Grumman* only highlight the similarities. The key to that court's privilege analysis was the fact that the "claim Research Papers" were created by technical staff to fulfill a non-legal business purpose: preparing a contracting officer's final decision. 80 Fed. Cl. at 655. ████████████████ ████████████████████████████████████████ ████████████ The distinction the government draws, ████████████ ████████████████████████████████████████, finds

6

no support in the case law. ███████████████████████████████████████████

███████████████████████████████. In *Northrop Grumman*, the court ███████

███████████████████ concluded that, even where litigation was a possibility, the document was not protected because it "would have been prepared even in the ordinary course of business, and even if the agency and contractor could have settled the case prior to litigation." *Id.*

    2.    Waiver

As with the prior document, the government's response to URS's argument that privilege was waived through the government's failure to act once documents were brought to its attention, ECF No. 68 at 14 n.11, is based on an easily refuted misstatement of fact.[5] The government writes, "Because plaintiff's motion is the first time we have been informed of the production of these documents, we accordingly assert privilege over these documents as well (DEFPROD006-00220759; DEFPROD1323106; and DEFPROD006-00107096)."[6] This is incorrect. On February 27, two weeks before the government produced its Supplemental Privilege Log, URS wrote, "Again, the government has produced both other versions of this email thread and other versions of the document in question, including in the productions that were made after the government's privilege review that was conducted in 2024 (see, e.g. DEFPROD006-00108435; DEFPROD006-00220759; DEFPROD006-00107096)." ECF No. 64-5 at 6. Plainly, URS informed the government of the production of these documents. And, because these documents are not carbon copies of the document originally clawed back, the government must provide a specific evidentiary basis to assert privilege over each, a showing the

---

[5]    As above, *see supra* at 4 n.3, URS withdraws the argument that the government's repeated production effects a waiver

[6]    The government does not identify DEFPROD1132080, which was Exhibit K to URS's opening submission, or DEFPROD006-00108435, which was referenced in footnote 11 of URS's brief, as privileged.

government does not attempt to make. As URS wrote in its opening submission, "the government's failure to act to protect the government's privilege constitutes an additional waiver." ECF No. 68 at 14 n.11.

## CONCLUSION

For the reasons stated herein and in URS's opening brief, URS respectfully requests that the Court grant its motion and compel the government to withdraw its claims of attorney-client privilege over the previously produced documents or compel the production of such documents.

Respectfully submitted,

        *s/ Charles C. Speth*
        CHARLES C. SPETH, *Counsel of Record*
        WILMER CUTLER PICKERING
          HALE AND DORR LLP
        2100 Pennsylvania Avenue N.W.
        Washington, D.C. 20037
        Telephone: (202) 663-6000
        Facsimile: (202) 663-6363
        Email: charles.speth@wilmerhale.com

        ANDREW E. SHIPLEY, *Of Counsel*
        WILMER CUTLER PICKERING
          HALE AND DORR LLP
        2100 Pennsylvania Avenue N.W.
        Washington, D.C. 20037
        Telephone: (202) 663-6000
        Facsimile: (202) 663-6363
        Email: andrew.shipley@wilmerhale.com

        *Attorneys for Plaintiff Amentum Environment & Energy, Inc.*

Dated: April 28, 2025